## WILLIAM H. THORNBURGH V. CITY OF TYLER.

Delivered June 10, 1897.

**1. Judge—Disqualification.**

A judge is not disqualified to sit on the trial of an action against a city because he is a taxpayer in such city.

**2. Cities—Railroad Aid Bonds—Authority to Issue.**

A city does not have authority to issue railroad aid bonds unless it is expressly conferred by its charter.

**3. Same—Same—Same—Title of Act.**

Authority to issue railroad aid bonds may be conferred on a city in its charter, without any special reference thereto in the title of the charter.

**4. Same—Same—General Law.**

Authority given a city in its charter to issue railroad aid bonds does not exempt the city from a compliance with the requirements of the general law with reference to bonds.

**5. Finding of Court—Evidence Not Sustaining—Levy of Tax.**

Where one witness testified that a tax was levied at or about the time certain bonds were issued, and another testified that the tax was levied about the same time, but he thought it was after, but was not sure, and the bonds recite that they were issued after the tax was levied, and all the circumstances show that such must have been the case, a finding that the tax was not levied until after the bonds were issued is not supported by the evidence.

**6. Railroad Aid Bonds—Validity—Levy of Tax.**

Railroad aid bonds issued by a city are not invalid because an annual tax for the payment of the interest and 2 per cent of the principal was not levied before or at the time the bonds were issued.

**7. Pleading and Proof—Variance.**

A variance between bonds described in a petition and those introduced in evidence does not require reversal where the variance is not such as to have misled or surprised the adverse party.

**8. Railroad Aid Bonds—Execution by City—Seal.**

Railroad aid bonds issued by a city having a seal, in obedience to an order of the board of aldermen, are not invalid because the seal was not used.

**9. Limitations—Installments on Bonds.**

The right to recover installments on railroad aid bonds, accruing more than four years before the commencement of a suit on such bonds, is barred by limitations where the money collected on the tax to meet such installments was disbursed by the city assessor and collector of taxes in the purchase and payment in full of bonds, in-

stead of being paid over to the Comptroller to meet such assessments, and the canceled coupons on bonds obtained by such money were transferred to the Comptroller and credit obtained therefor on his tax accounts, and such canceled bonds were thereafter returned and destroyed.

APPEAL from Smith. Tried below before Hon. FELIX J. McCORD.

*T. K. Skinner*, for appellant.—1. Judge Felix J. McCord, the judge of the District Court, was disqualified by interest to try this case, and should have refused to preside. City of Austin v. Nalle, 85 Texas, 520; City of Dallas v. Peacock, 33 S. W. Rep., 220; State v. City of Cisco, 33 S. W. Rep., 244.

2. The court below erred in holding that it was essential to the validity of the bonds in question that, before their issue, an annual tax should have been levied sufficient to pay the interest and 2 per cent of the principal thereof, besides the cost of assessing and collecting said tax. Morrill v. Smith County, 36 S. W. Rep., 56.

3. The court below erred in holding that the evidence was insufficient to show that, before the issue of the bonds, an annual tax was levied sufficient to pay the annual interest and 2 per cent annually of the principal of the bonds, besides the cost of levying and collecting the tax. 1 Phil. on Ev., *p. 610; State v. Smith, 22 Minn., 218; State y. Vail, 53 Iowa, 550; 1 Rice on Ev., p. 57; Baker v. Underwood, 63 Mo., 384, 389; Owen v. Baker, 101 Mo., 407; Plank Road Co. v. Bruce, 6 Md., 457, 466; Allegheny City v. Nelson, 25 Pa. St., 332, 334; Emmons v. Oldham, 12 Texas, 18; Austin v. Austin, 50 Me., 74; Doolittle v. Holton, 28 Vt., 819.

*H. C. & Cone Johnson* and *Jas. M. Edwards*, for appellee.—1. The court erred in its conclusion of law that the validity of the bonds in suit was not affected by the fact that they did not purport to be, and were not, issued under or attested by the corporate seal of defendant city. Rev. Stats., art. 4862; San Antonio v. Gould, 34 Texas, 49, 74-78; Shropshire v. Behrens, 77 Texas, 275; Garrett v. Belmont, 29 S. W. Rep., 726; 3 Early Laws of Texas, art. 3527, secs. 6, 16; Burr. on Pub. Sec., p. 244; Angell & Ames on Corp., sec. 295; Gashwiler v. Willis, 33 Cal., 16; Ditch Co. v. Zellerbach, 37 Cal., 543, 596; Danville v. Mott, 28 N. E. Rep., 54; Williams v. State, 6 L. R. A., 821.

2. The special act, entitled "An act to incorporate the city of Tyler and to provide for the administration of its municipal affairs" was unconstitutional in and as to sections 16, 17, and 18 thereof, wherein the said act attempts to confer upon the city of Tyler the power to extend aid to railroads and other works of internal improvement, and for this purpose to issue the bonds of said city in any amount not exceeding $1,000,-000, as the board of aldermen might think proper, and under such regulations as they might adopt, because such objects were not expressed in the title of said act. Texas Const. 1869, art. 12, sec. 17; San Antonio v. Gould, 34 Texas, 49, 70-74; Giddings v. San Antonio, 47 Texas, 548; Peck v. San Antonio, 51 Texas, 490; Adams v. Water-works Co., 86

Texas, 485; Ragio v. State, 6 S. W. Rep., 401; Parkland v. Gaines, 11 S. W. Rep., 649.

GARRETT, CHIEF JUSTICE.—This was an action brought by William H. Thornburgh to recover of the city of Tyler upon 250 bonds of the value of $100 each, issued in aid of the Houston & Great Northern Railroad. The case was tried below before the Honorable Felix J. McCord, the district judge, without a jury, and judgment was rendered in favor of the city that plaintiff take nothing, holding the bonds invalid.

Plaintiff objected to a trial before Judge McCord, because he was a taxpayer in the city of Tyler, and for that reason disqualified to sit in the trial of the case, but the objection was overruled, and the ruling has been assigned and presented to this court as erroneous. It appears from the decision of the Supreme Court in the case of the city of Dallas v. Peacock, 33 Southwestern Reporter, 220, that there is no disposition to extend the disqualification of a judge beyond the rule announced in the city of Austin v. Nalle, 85 Texas, 520. There is a distinction between the latter case, which holds the judge disqualified, and the one now before the court. The Nalle case directly involved the levy of a tax and the legality of bonds supported by a tax already levied, and was to prevent the issuance of bonds for the payment of which it would have been necessary to levy a tax before they could have been issued. So, in that case, tax levies were directly involved, while in this case the suit is a simple suit for the recovery of a money judgment upon the obligations of the city. This is nearer like the Peacock case than the Nalle case. We hold, therefore, that Judge McCord was not disqualified.

The bonds sued on were in form as follows:

"UNITED STATES OF AMERICA.

"THE CITY OF TYLER, STATE OF TEXAS.

"No. . . . . . . . . . . .                                    $100.

"The city of Tyler, in the county of Smith, in the State of Texas, a body politic and corporate by the general law of the State, hereby acknowledges that, for value received, it is indebted and bound, and hereby promises to pay unto the Houston & Great Northern Railroad Company, or their assigns, at the office of the Treasurer of the State of Texas, at the expiration of twenty years from the date hereof, the sum of one hundred dollars, in lawful money of the United States of America (or so much thereof as may then remain unpaid, that is to say, one hundred dollars, less the annual installments of two per cent, which are to be paid annually, commencing on the first day of January, A. D. 1874), and also that it is bound and will pay interest on said sum of one hundred dollars, or so much thereof as may be unpaid, at the rate of eight per centum per annum, on the first day of January, A. D. 1874, and on the first day of January of each year thereafter, to and including the first day of January, A. D. 1893, to the bearer, according to the respective coupons there-

for, hereto annexed, for eight dollars each, signed by the Mayor, and attested by the Secretary of the Board of Aldermen of said city of Tyler, upon presentation thereof at the office aforesaid, and warrant therefor of the Comptroller of the State; and so much of the said eight dollars as is not required to pay the interest due at the time of said payment, shall be applied in payment of the principal of this bond.

"This bond is authorized by a vote of two-thirds of the qualified electors of said city at an election held in pursuance of an order of the Board of Aldermen of said city and the general law of the State, on the 31st day of July and the 1st, 2d, and 3d days of August, 1872, to take the opinion of the electors of said city on a proposition to donate to the Houston & Great Northern Railroad Company, on certain conditions therein expressed, fifty thousand dollars in bonds of said city, which proposition was accepted, and all of said conditions fully performed and complied with by said Houston & Great Northern Railroad Company, as by the records of said city fully appears, and by order of said Board of Aldermen requiring the issue of this series of bonds in accordance with said proposition.

"This bond is one of a series of five hundred of like tenor and effect, and is secured by a decree of the Board of Aldermen of said city and the general law of the State requiring and levying an annual tax upon all the real and personal estate in said City of Tyler, to raise an annual fund sufficient to pay the said interest, and two per cent annually on the fifty thousand dollars, as hereinbefore stipulated; and further, by the Constitution of the State, providing that the law levying said tax is irrepealable, until the principal and interest shall be fully paid.

"In witness whereof, the mayor of the said city of Tyler hereto signs his name, and the secretary of said Board of Aldermen attests, at Tyler, in said county, the 30th day of April, A. D. 1873.

                                        "J. M. Hockersmith, Mayor.
    "Attest:  W. G. Cain, Secretary."

Attached to each of the bonds were twenty coupons, numbered from 1 to 20, inclusive. Coupon No. 1 was for $5.33. Coupons Nos. 2 to 20, inclusive, were for $8 each. Coupons Nos. 2 to 20, inclusive, were in words and figures following, mutatis mutandis, to wit:

"No. 20. On the first day of January, 1893, at the office of the Treasurer of the State of Texas, for value received, the city of Tyler, in said State, will pay to the bearer eight dollars on City Bond No. ———, issued to the Houston & Great Northern Railroad Company on 30th April, 1873, which amount is to be indorsed in payment of the interest and principal of said bond.

                                        "J. M. Hockersmith, Mayor.
    "Attest:  W. G. Cain, Secretary of Board of Aldermen."

As appears from the recitals in the bonds, they were voted by the qualified electors of the city of Tyler as a donation to the Houston & Great

Northern Railroad. The condition upon which the donation was voted was that the railroad company should build and complete a railroad, and the same should be operated through the city of Tyler. The railroad company complied with the condition, and the bonds were issued, but the court below held that they were invalid, because no tax was levied by the board of aldermen before they were issued to pay the annual interest and not less than 2 per cent annually of the principal, besides the expenses of assessing and collecting the tax. It appeared that a tax was levied for the purpose, but it does not appear whether or not it was sufficient, and the court found that it was levied after the bonds had been issued. Appellant contends that the finding of the court is against the evidence, but also that the validity of the bonds does not depend upon the levy of the tax prior to or simultaneously with their issuance, whether the bonds were issued in accordance with the city charter authorizing them or under the general statute. The position of appellant is, in other words, that it was not necessary to levy the tax prior to or at the time of the issuance of the bonds, because the charter of the city conferred the power upon the board of aldermen to issue the bonds under such regulations as they might adopt, without reference to the general law on the subject, further than that they should be consistent therewith; but that, even if it should be held that it was necessary to the validity of the bonds that they should have been issued in accordance with the requirements of the general law, they were still valid, because, in the first place, the tax had been levied, and in the second place, the levy of the tax was not essential to their validity. Appellee combats these positions with the contention that the charter of the city of Tyler was unconstitutional, in so far as it undertook to authorize the issuance of the bonds, because the power to do so was an object not expressed in the title of the act constituting the charter, and that they were invalid because not issued in compliance with the general law, by first levying a tax as therein provided, without which there was no power in the board of aldermen to issue them.

The city of Tyler was incorporated by a special act of the Legislature approved April 26, 1871. Spec. Laws, p. 200. The title of the act is, "An act to incorporate the city of Tyler, and to provide for the administration of its municipal affairs." The power to extend aid to railroads, and to issue bonds for that purpose, is expressly conferred in sections 16, 17, and 18 of the act, as follows:

"Sec. 16. That the board of aldermen shall have the right, if they deem it to be for the interest of the city, to extend such aid to railroads approaching said city, and for other works of internal improvement, as they in their sound discretion may think judicious and proper.

"Sec. 17. That for the purpose of meeting any liability that may be incurred under the provisions of the last preceding section, said board of aldermen may, under such regulations as they may adopt, issue the bonds of said city, not to exceed one million dollars.

"Sec. 18. That for the payment of the interest on the said bonds, as well as for their ultimate redemption, said board of aldermen is hereby

authorized to make such provisions, consistent with the Constitution and laws of the State, as to them may seem right and proper."

There is no doubt that a city does not have the power to issue bonds in aid of a railroad without its having been expressly conferred upon it by its charter. Bank v. Terrell, 78 Texas, 450. But it is nevertheless a power that may be conferred, and may be properly enumerated among the powers granted, without its being necessary to express it in the title of the charter. 1 Dill. on Mun. Corp., secs. 153-158, and other authorities cited in the brief of appellant. The case of Giddings v. San Antonio, 47 Texas, 548, was a case in which the Legislature, in granting a charter to a railroad, undertook to empower the city of San Antonio to subscribe to its capital stock, and is not applicable to the question here.

But it appears from the record that the board of aldermen of Tyler undertook to do so, if they did not follow the general law (Laws 1871, p. 29) in the issuance of the bonds, and the provisions of the general law were no doubt the regulations adopted by the city council for their issuance. Be this as it may, the charter became a law after the general law, and we do not think there is anything in the charter to exempt the city of Tyler from a compliance with the general law on the subject, although it may have been unnecessary to include the power in the charter, since such power could have been exercised under the statute already enacted. It is our conclusion that the provision in the charter conferring the power to extend aid to railroads was not invalid because not expressed in the title of the act, but that the power given in the charter did not exempt the city from a compliance with the requirements of the general law in the extension of aid and the issuance of the bonds.

It is not disputed that every requirement of the general law authorizing the issuance of the bonds had been complied with, except as to the levy of the tax, as required in section 6 of the act. The minutes of the board of aldermen and the assessment rolls of the city had been lost, and were not produced at the trial below, and secondary evidence was resorted to in order to make proof of the issuance of the bonds, the levy of the tax, and the assessed value of property subject to taxation in the city. The railroad company had completed the road prior to April 30, 1873, and was entitled to have the bonds issued and delivered to it. Morrill v. Smith County, 36 S. W. Rep., 56. The bonds were actually issued and delivered some time between the 2d and 9th of October, 1873, but they bore date as of April 30, 1873. They were issued in compliance with an order of the board of aldermen directing the mayor and city secretary to sign up and deliver them.

A tax was levied about the time the bonds were issued to provide for the interest and 2 per cent thereof as a sinking fund. The court found inferentially that this tax had not been levied until after the bonds had been issued, and held the bonds invalid for that reason. We think that this finding is against the evidence, which shows that a tax was levied about the time that the bonds were issued, and annually thereafter. Only two witnesses testified as to the levy of the tax. Spain, whose duty

it was as city marshal to make the assessment, said that the tax was levied, and that "it was levied at or about the time the bonds were issued." Hockersmith, who was mayor at the time, testified that the tax was levied about the time the bonds were issued; thought it was after, but couldn't state positively either way. It appears from the evidence that the board of aldermen and mayor were endeavoring to issue the bonds in compliance with the State law, and that they were familiar with the action of the County Court, which was issuing on the part of the county at about the same time a similar lot of bonds for the same purpose, and the order of the County Court was put in evidence, which provided for a tax levy in the order directing the issuance. The order of the board of aldermen directing the issuance of the city bonds was shown to have been made before the bonds were issued. Every circumstance shown with respect to the issuance of the bonds shows that they must have been issued after the tax levy. The fact that they were issued about the same time is uncontroverted. They recited that the tax had been levied, and for more than twenty years their validity has been recognized by the city authorities.

But we are further of the opinion that the validity of the bonds does not depend upon the levy of the tax prior to or at the time they were issued. The opinion of the Supreme Court in Morrill v. Smith County does not go so far, but we think the conclusion announced is a logical deduction from the language of the opinion in that case. The court said, Chief Justice Gaines delivering the opinion: "The power to issue the bonds was made dependent upon a compliance on the part of the company with the terms of the propositions submitted by the County Court, and approved by the vote of the people. When the work was completed a debt was created, and it became the imperative duty of the County Court (or the police court, as it was then called) to issue the bonds, or make the donation, as the case might be. The statute had limited the amount of the indebtedness. It had also fixed a limit to the tax to be levied, and had provided for the levy of a tax to pay the annual interest and installments upon the bonds. Under such circumstances, it is unreasonable to presume that the Legislature intended to make the validity of the bonds dependent upon the sufficiency of the tax levied for the payment of the annual interest and installments, or, in other words, to provide that in case the court should, either intentionally or through error of judgment, make an insufficient levy, the bonds should be absolutely void. It is true that the words 'no such bonds shall be issued until the court shall have first levied an annual tax,' etc., make it the imperative duty of the court to levy what they should deem a tax sufficient in amount for the purpose. They are words of command, and in a sense mandatory. But they are not necessarily mandatory in the sense that the bonds should be void in the event the tax, for any reason, should not be sufficient."

The above reasoning does not stick in the sufficiency of a levy, but extends to the conclusion that the bonds would not have been invalid if the County Court had in fact issued them without having first levied any tax

at all. The language quoted from the act is mandatory, in the sense that it was the imperative duty of the court to levy the tax before the bonds should be issued, but not in a sense to render the bonds invalid which it was the imperative duty of the court to issue. Of course, we are aware that this conclusion is the reverse of that reached by this court in Morrill v. Smith County, 33 Southwestern Reporter, 907, and that the decision of the Supreme Court in reversing the judgment of this court in that case did so upon facts that showed an attempted compliance with the law by the levy of a tax that was insufficient in amount. But we do not see how the construction placed by us on the decision can be avoided, and this court should, in the discharge of its duty to follow the decisions of the Supreme Court, do so ungrudgingly.

The remaining assignments of error we shall notice more briefly. The decision of the Supreme Court in the Morrill case disposes of the question of limitation as to installments due for more than four years when the suit was brought. This holding is in deference to what we believe to have been the decision of the Supreme Court in the Morrill case. The evidence shows that the officers of the city took up the coupons in collecting the taxes, and received credit for them with the comptroller in settling with him, upon the delivery of them instead of the money, and that under the direction of the board of aldermen the city collector of taxes paid the bonds that were taken up by the city, and that the comptroller allowed credit therefor in settlement with the collector. The money credited upon the tax levy was not in fact paid to the comptroller, but the action of the several boards of aldermen and tax collectors was, in effect, under his direction, as appeared from a long course of dealing in the matter. So it must be held that the money was collected and paid to the comptroller, and misapplied by that officer and the treasurer in the redemption of bonds, instead of the payment of 2 per cent installments thereon, and following the rule prescribed in the Morrill case, that the appellant should be subrogated to a remedy on the bonds taken up with the money that should have been applied to the installments on his bonds. No installments were ever in fact paid or demanded.

But the appellee says no such relief is prayed for. The judgment of the court below must be reversed for the reasons stated above, and as it must be reversed, the cause will be remanded to enable the appellant to amend his pleadings so that he may recover for the installments paid to the comptroller and used in the redemption of other bonds. It is proper, we think, to remand the cause and give him an opportunity to amend and settle the entire controversy in this suit, although it might be that if we were to render judgment upon the case before us, he might not be cut off from recovering in another suit. As held in Morrill v. Smith County, there is no question of limitation in the case.

Upon the cross-assignments of error, we hold that there was no such variance between the bonds described in the petition and those introduced in evidence as should have misled or surprised the defendant. Whatever variance there may have been was not fatal.

It was shown by the evidence that the city of Tyler had a seal, but none was used in the execution of the bonds. The failure to use the seal did not render the bonds invalid. It was shown that they were issued in obedience to an order of the board of aldermen.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

#### November 12, 1897.

GARRETT, CHIEF JUSTICE.—After a full consideration of the appellee's motion for a rehearing, we have concluded that its plea of limitation to the installments on the bonds sued on that accrued more than four years before the institution of the suit should have been sustained. There is a marked distinction between this case and the Morrill case in the facts with regard to the payment of money collected from the tax. In the Morrill case, it appeared that the money was collected by the assessor and collector and paid over to the comptroller, and that the comptroller used it for the purpose of paying up and retiring certain bonds, instead of paying the installments on all of them as he should have done, and for that reason it was held by the Supreme Court that he was the trustee of the fund for the bondholders, and that the county had discharged the installments by the payment of the money to him. In this case, as found by this court in its conclusions of fact, no money was ever paid to the comptroller, and it could not be said that he acted with respect to it in any sense as a trustee, or invested it or caused it to be invested in the purchase of the bonds taken up by the assessor and collector of the city of Tyler, at the instruction of the city council, and there is no principle on which the money could be followed into the bonds so taken up. Again, we are of the opinion that, even if the use of the money that should have been paid upon the installments could be followed into the bonds that were paid, any action upon them would now be barred by the statute of limitations, because they fell due more than four years ago.

In our conclusions of fact, the conclusions with regard to the manner of collection of the tax and the payment thereof to the comptroller were briefly stated, and as they have been objected to, we will state them more at length.

The evidence shows that the money collected on the tax for payment to the comptroller as a fund to meet the interest coupons and 2 per cent annual installments upon the bonds was disbursed by the city assessor and collector of taxes, under the direction of the city council. He collected the money and paid the coupons as they matured, in accordance with the instructions of that body. From time to time, when there would be a surplus of the bond tax fund on hand, the city council would, by an order entered on its minutes, direct an advertisement to be made for offers to sell bonds to the city, and after the offers were in, would accept the lowest to the extent of the amount of money on hand, and direct the assessor and collector to pay the money and take them up. They were then paid by

the assessor and collector with the money in his hands. All bonds and coupons when paid were canceled by him, and all money arising from the bond tax and collected by him was retained by him in his own hands. It was never paid over by him either to the city treasurer or to the comptroller or Treasurer of the State. In making his settlements with the comptroller, instead of paying the money to him, the assesor and collector presented or sent to that officer the canceled coupons and bonds, and obtained credit therefor on his tax account. They were afterwards returned and destroyed. These conclusions are reached from the testimony of the witnesses Jessup and Duke, the proceedings of the city council, and the statement from the comptroller's books. While Jessup and Duke were not in office more than about seven years of the period embracing these transactions, yet the items of the statement of the comptroller are consistent with the course of the transaction shown by the witnesses, and the minutes of the city council show the manner in which the bonds were taken up.

The bonds sued upon matured on the 30th day of April, 1883. This suit was instituted on December 31, 1895. Consequently eighteen of the installments due on said bonds were barred by statute of limitations when the suit was filed. The motion for a rehearing will be granted, and the plea of limitation to these installments will be sustained, and judgment here rendered in favor of the appellant for the amount of the bonds sued on, less 36 per cent thereof, together with the interest thereon at the rate of 8 per cent per annum from the 1st day of January, 1893.

*Rehearing granted and judgment rendered.*

Writ of error refused.