## CITY OF VERNON et al. v. MONTGOMERY.* (No. 2344.)

(Court of Civil Appeals of Texas. Amarillo. June 25, 1924. Rehearing Denied Oct. 8, 1924.)

1. **Municipal corporations** ⬤⟹917(1) — **Statutory requirements as to proceedings preceding bond issue must be substantially observed.**

Statutory or charter requirements as to proceedings preceding bond issue must be substantially observed, so far as essential and mandatory, especially in regard to conditions precedent, but slight irregularities are not fatal.

2. **Municipal corporations** ⬤⟹918(2) — **Order authorizing bond election sufficient, in absence of statute requiring ordinance or resolution.**

In absence of statutory or charter provision requiring ordinance or resolution to authorize election to determine issuance of bonds for construction of electric light plant, motion and order by city council is sufficient.

3. **Municipal corporations** ⬤⟹918(1) — **Calling bond election not legislative act.**

Calling municipal bond election is not legislative, but purely administrative and ministerial, act.

4. **Municipal corporations** ⬤⟹918(2) — **Order for bond election need not state date of maturity.**

Under Vernon's Ann. Civ. St. Supp. 1922, art. 606, order for municipal bond election, submitting proposition for bonds to mature serially, need not state date of maturity of bonds; city council being vested with specific authority to issue bonds authorized serially and to fix dates of maturity of several series at such time.

5. **Municipal corporations** ⬤⟹911 — **City authorized to construct lighting plant competing with existing plant.**

Under Const. art. 1, § 26, Vernon's Sayles' Ann. Civ. St. 1914, arts. 605, 1096d, and Vernon City Charter, art. 8, § 1, Vernon city council may issue bonds for construction of municipal electric light plant, though it may result

---

in competition with plant already operating under city franchise.

**6. Municipal corporations ⬅➡907 — Charter provisions authorizing bond issue for construction and acquisition of lighting plant held not conflicting.**

Vernon City Charter, art. 8, § 1, authorizing city to issue bonds for erection of municipal electric light plant, *held* not in conflict with article 2, § 10, authorizing issuance of bonds to acquire public utility by purchase, condemnation, or otherwise; such section contemplating acquisition of utility already in existence.

**7. Constitutional law ⬅➡125 — Municipal corporations ⬅➡266—Charter giving city exclusive right to operate public utility impairs obligation of contract if it deprives franchise holder of right.**

Vernon City Charter, art. 2, § 12, giving city exclusive right to operate public service utility acquired by purchase, gift, etc., if construed as depriving franchise holder of right to operate light and water system, would be unconstitutional as impairing obligation of contract.

**8. Municipal corporations ⬅➡266 — Objection to bond issue under charter provision because of conflict with another provision overruled on ground of invalidity of latter.**

Vernon City Charter, art. 2, § 12, giving city right to operate public service utility acquired by it, if in conflict with article 8, § 1, authorizing bond issue for purchase, erection, etc., of electric light plant, *held* to also conflict with the general laws (Vernon's Sayles' Ann. Civ. St. 1914, arts. 605, 1096d), in violation of Const. art. 11, § 5, and therefore objection to bond issue pursuant to article 8, § 1, on ground of such conflict, must be overruled.

**9. Municipal corporations ⬅➡926—Bonds held not invalidated by provision as to interest.**

That city commission, after election authorizing bond issue, provided for payment of interest semiannually, instead of annually, as contemplated by proposition submitted to people, did not invalidate bonds, as violating Vernon City Charter, art. 8, § 1.

**10. Municipal corporations ⬅➡926—Bonds providing for interest payable semiannually authorized.**

Under Vernon City Charter, art. 8, § 1, city commission may make interest on bonds authorized payable semiannually instead of annually, as contempated in proposition submitted to people, if thought best in members' discretion, and court should not revise such action, in absence of showing that change is prejudicial, but city may rescind action and make interest payable annually, if prejudicial.

**11. Municipal corporations ⬅➡993(3)—Insufficiency of property valuation to support two bond issues held not ground for enjoining issuance of bonds first authorized.**

That taxable valuation of city property is insufficient to support both bonds issued for construction of electric light plant and subsequent issue of bonds for construction of high school building would invalidate only such percentage of former bonds as constituted overissue, and is not ground for perpetually enjoining issuance of such bonds, as any attempt to issue more than legal amount would be enjoined.

Appeal from District Court, Wilbarger County; J. V. Leak, Judge.

Suit by Charlotte Montgomery against the City of Vernon, its mayor and other officials, to restrain issuance and sale of bonds. Decree for plaintiff, and defendants appeal. Reversed and rendered.

Bonner, Storey & Storey, Cook, Cook & Cole, and Harry Mason, all of Vernon, for appellants.

Berry, Stokes & Killough, of Vernon, and Templeton, Brooks, Napier & Brown, of San Antonio, for appellee.

HALL, C. J. On the 3d day of January, 1923, the property tax paying voters of the city of Vernon, at an election held for that purpose, voted for the issuance of $100,000 of municipal bonds by said city, for the purpose of erecting and constructing an electric light plant for the city. The appellee, Mrs. Montgomery, alleging that she owned property in the city subject to taxes, filed this suit agains the mayor and other officials of the city to restrain them from causing the bonds to be issued and sold.

She alleges, in substance, that on the 3d day of January, 1922, said city had outstanding against it legal and binding obligations, in the form of municipal bonds, amounting in the aggregate to $194,460, and city warrants amounting to approximately $25,000, upon which said city was required annually to pay the sum of $16,146 as interest and sinking fund; that it would require an additional amount of at least $8.000 annually to provide for interest and a sinking fund for the proposed bonds; that on the 21st day of November, 1921, the city commission passed a resolution submitting to the qualified voters of said city a proposition for the issuance of the bonds; that the order calling said election and said resolution are, under the terms of the city charter, null and void; that by section 12, art. 2, of said city charter it is provided that, whenever said city shall operate and maintain an electric lighting system or other public utility, the right to operate and maintain such public utilities shall be exclusive; that the election for the issuance of said bonds was held under the provisions of said charter and that on or about the 25th day of April, 1913, the city commission had granted to Albert Emanuel, his heirs, successors, and assigns, the right, power, and authority, to erect, maintain, extend, and operate a system of works, poles, wires, underground conduits, cables, and all necessary apparatus and appurtenances within

---

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the corporate limits of the city, for the purpose of generating electricity for sale and distribution to the public generally for light, heating, and power; that the franchise so granted expressly provided that it should run for a term of 50 years from and after that date; that only 9 years thereof had expired; that acting under said franchise an electric light plant, fully equipped, had been erected and was then serving the public, for which reason the said condition of the charter cannot be carried out; that, if the city is permitted to erect the proposed plant, its right to maintain and operate the same cannot be exclusive, as required by the charter, but will be operated for more than 40 years in competition with the existing light plant and will consequently be run at a great loss, incurring the levy and assessment of enormous additional taxes to pay said losses; that under the provisions of section 10, art. 2, of said chapter that said city has no power to issue tax bonds or to levy any tax to pay interest or provide a sinking fund for the purpose of building an electric light plant, but that said city is only authorized to issue bonds or notes or other evidence of indebtedness and secure the payment thereof by fixing a lien on said public utility; that it is specially provided in said section that the security shall apply alone to said public utility; that there is not property subject to taxation in said city of sufficient value to provide for the payment of its outstanding indebtedness and create a sinking fund for the payment of principal and interest of the proposed bonds.

The appellants answered by general demurrer, general denial, and specially answered to that portion of the appellee's petition, wherein it is alleged that—

"Defendants passed an ordinance No. 387, on the 10th day of January, 1922, providing for the issuance of the bonds in suit."

They admitted that said ordinance was duly passed, but that thereafter, by Ordinance No. 389, or resolution duly and regularly passed by the city commission on the 13th day of April, 1923, the first above-mentioned ordinance was regularly and legally repealed, and that the defendants were not now attempting to issue bonds under the first mentioned ordinance and did not intend to do so; that on, to wit, the 13th day of April, 1922, the city commission legally and regularly adopted an ordinance providing for the issuance of said bonds, and thereafter, prior to the institution of plaintiff's suit, certified copies of all proceedings pertaining to the issuance of said bonds were placed in the hands of the Attorney General of Texas, and were approved by him.

There was a trial before the court without a jury, and a decree entered perpetually enjoining the city and its officials from issuing, printing, negotiating, or disposing of said bonds, in any manner whatever.

It is first contended that the bonds have been illegally issued because no ordinance was passed by the city council calling the election. It appears that at a regular session of the city council on the 21st day of November, 1921—

"It was moved by Commissioner Rogers, and seconded by Commissioner Blockwood, that there be submitted to the qualified voters of the said city, who are property tax payers therein, a proposition for the issuance of the bonds of said city, in the sum of $100,000, for the purpose of the construction and erection of an electric light plant in the said city of Vernon, Tex., the election to be held on the 3d day of January, A. D. 1922. The motion carried by the following vote: Commissioners Rogers, Blackwood, Napier, and Mason voting aye; none voting no. Thereupon the following election order was adopted."

[1] The general rule relating to such matters is expressed in volume 5, McQuillin Mun. Corp., § 2299, as follows:

"A bond issue is preceded by certain proceedings, usually provided for by statute or charter; such statutory or charter requirements, in so far as essential and mandatory, must be observed in substance, especially in regard to conditions precedent, but slight irregularities in such proceedings of course are not fatal. If an ordinance or resolution is necessary, bonds issued without any such ordinance or resolution are void. If the statute or charter requires an ordinance a resolution is insufficient, but if there is no provision in regard thereto, a resolution is proper or a motion."

[2, 3] There is no statutory or charter provision requiring that an ordinance, or even a resolution, is necessary to authorize an election to determine an issue of bonds of this character. In the absence of any such statute, or charter provisions, we hold that the motion or order above quoted is all that is required. This question has not been directly passed upon by the courts of this state, but in cases involving the validity of bonds our courts have upheld them without the formality of a previous ordinance, authorizing the election on the issuance of the bonds. Thornburgh v. Tyler, 16 Tex. Civ. App. 439, 43 S. W. 1054; Conklin v. El Paso (Tex. Civ. App.) 44 S. W. 879; Simpson v. City of Nacogdoches (Tex. Civ. App.) 152 S. W. 858; McCarthy v. McElvaney (Tex. Civ. App.) 182 S. W. 1181; Hunter v. Rice (Tex. Civ. App.) 190 S. W. 840. This holding is in accord with the weight of authority in other jurisdictions. Atchison Board of Education v. De Kay, 148 U. S. 591, 13 Sup. Ct. 706, 37 L. Ed. 573; Wrought-Iron Bridge Co. v. Arkansas City, 59 Kan. 259, 52 Pac. 869; State v. Babcock, 20 Neb. 522, 31 N. W. 8; Common Council v. Engel, 207 Mich. 106, 173 N. W. 547; 28 Cyc. 1585. It is not clear why an ordinance is ever necessary to the calling of an election within a municipality to deter-

mine upon the issuance of bonds, since the calling of such an election is in no sense a legislative act. The call results in the enactment of no law, but is purely an administrative and ministerial matter.

[4] It is next contended that the bonds are void because the order for the election does not state the date of the maturity of the bonds. V. S. C. S. art. 606 (1922 Supp.), provides:

"The proposition to be submitted for the issuance of bonds shall distinctly specify the purpose for which the bonds are to be issued, the amount thereof and the rate of interest, and shall further state the maturity of the bonds to be issued, or that the bonds may be issued to mature serially within any given number of years, not to exceed forty years, within the discretion of the governing body issuing the same."

The election order provides for the holding of an election at which the following proposition should be submitted:

"Shall the city commission of the city of Vernon, Texas, be authorized to issue bonds of said city in the sum of one hundred thousand ($100,000) dollars, payable in forty (40) years after date, bearing interest at the rate of six (6%) per cent. per annum, payable annually, said bonds maturing at such times as may be fixed by the city commission serially? Said bonds to become due and paid for serially as issued."

It will be observed that the order describes the bonds to be issued as "payable in forty (40) years after date." And further recites, "said bonds maturing at such times as may be fixed by the city commission serially." We do not construe the article of the statute referred to as requiring the order for the election, submitting a proposition for bonds to mature serially, to state specifically what amount of bonds shall mature each year, but rather the statute leaves the date of the maturity of the several series of bonds "within the discretion of the governing body issuing the same," and that this discretion may be exercised after the bonds have been voted and at the time any series may be issued and sold. In the case of Hunter v. Rice (Tex. Civ. App.) 190 S. W. 840, the order for the election did not fix the amount of the tax to be levied annually, and the court there said:

"As we understand the statutes relating to cases like the present, the Legislature, perhaps because the amount of the tax to be levied for the payment of the bonds was based on taxable values, which might change each year, has clothed the city council with the authority to ascertain the amount of that tax and to levy the same."

So in this case we think the Legislature has clothed the city council with discretion to determine the amount which the city might be able to pay upon any series of bonds, to be thereafter issued, and sold, in accordance with the varying valuation of city property, and as might be governed by the expenditures and revenue from time to time. The above-quoted article further provides:

"All elections heretofore held wherein the proposition or propositions submitted provide that the bonds should be issued to mature serially within any given number of years within the discretion of such governing body, or to mature in a certain number of years, are hereby validated, and such bonds may be issued to mature serially, the maturity thereof not to extend beyond the time stated in the proposition submitted and to otherwise conform to the proposition voted on at such election."

We conclude from this language that one purpose of amending the original article 606 was to set at rest this very question with reference to bonds voted under a proposition similar to that under consideration, and to vest the city council with specific authority in such cases to issue them serially, and at that time fix the dates of the maturity of the several series. We can conceive of no other purpose the Legislature had in the language last above quoted. The identical question under consideration here was decided by the Supreme Court of North Carolina in Tyson v. City of Salisbury, 151 N. C. 468, 66 S. E. 532, and the court said:

"As to the date of the maturity of the bonds, it was not necessary that this should be stated in the call or notice, because the act also refers that matter to the determination of the board of aldermen."

[5] It is insisted under the fourth ground of objection that the city did not have the right to issue bonds for the purpose of constructing the water and light plant because the undisputed evidence shows that if such plant should be constructed the city could not have the exclusive right to operate a light plant because there was an outstanding franchise and another plant in existence. This contention is not sound. Under the state Constitution, art. 1, § 26, it has been held that a city cannot grant a private corporation an exclusive franchise to furnish water, light, and power or gas to the inhabitants of such city for a given number of years. Hartford Fire Insurance Co. v. City of Houston, 102 Tex. 317, 116 S. W. 36; City of Brenham v. Brenham Water Co., 67 Tex. 542, 4 S. W. 143. Even though a franchise has been granted, the city can nevertheless grant a similar franchise for the operation of a similar public utility to another corporation or can construct its own plant and operate it in competition with the company to which such a franchise has been granted. City of Austin v. Nalle, 85 Tex. 520, 22 S. W. 668, 960. The record discloses that Vernon is a city of over 5,000 inhabitants. In virtue of the general laws it has the right to construct, own, maintain, and operate its

own light and water system, and, as in this case, to issue bonds for that purpose. V. S. C. S. art. 1096d; Id., art. 605. Section 1 of article 8 of the City Charter is taken from V. S. C. S. art. 1096d, and reads as follows:

"Section 1, (article 8) *Bonds.*—The governing authority of the city shall have power to appropriate so much of the general revenue of the city as may be necessary for the purpose of retiring and discharging the accrued indebtedness of the city, and for the purpose of improving the streets, purchasing and constructing sewers, erecting and maintaining public buildings of every kind and for the purchasing or constructing waterworks, plants and systems and for the purpose of purchasing, erecting, maintaining and operating an electric light and power plant, and such other public utilities as the governing authority may from time to time deem expedient, and in furtherance of any and all these subjects the city shall have the right and power to borrow money upon the credit of the city and to issue coupon bonds of the city therefor, in such sum or sums as may be deemed expedient, to bear interest not to exceed six per cent. per annum, payable annually or semiannually, provided that the aggregate amount of said bonds shall at no time exceed that allowed by the laws of Texas," etc.

[6] We think it is clear from the record that the city council is fully authorized, not only by the general laws referred to above, but by this article of the city charter, to issue the bonds for the purpose of constructing a plant of its own, although it may result in competition with a plant which is already performing such services for the inhabitants of said city. It does not appear from the record that the city's plant is being operated at a loss to the taxpayer, but, on the contrary, it seems to be paying a reasonable per cent. upon the amount invested. Under the Nalle Case, and others cited therein, the city has the right to compete with another public utility operating under a city franchise, and according to the holding in that case, unless its action in constructing such a plant will prove disastrous and unreasonably expensive to the taxpayers, the courts will not interfere. It is further contended that the above-quoted section of the charter conflicts with sections 10 and 12 of article 2. We overrule this contention. Section 10 is as follows:

"*Funds for Acquisition of any Public Utility; Security for Same, etc.* Should the said city of Vernon determine to acquire any public utility by purchase, condemnation or otherwise, as herein provided, said city shall have the power to obtain funds for the purpose of acquiring said public utility and paying the compensation therefor, by issuing bonds or notes, or other evidence of indebtedness, and may secure the same by fixing a lien upon the property constituting the public utility so acquired, and said security shall apply alone to said property so acquired."

[7] The appellee contends that the word "acquire" as there used also includes the construction and building of a public utility by the city. Construing this section as a whole, we think no such meaning should be given to the word "acquire." This section clearly contemplates the acquisition of a utility already in existence rather than the construction of one in its entirety, as is contemplated under section 1, art. 8. Before the city could acquire a public utility by purchase or condemnation, such utility must necessarily be in existence, and express power is conferred upon the city to obtain the funds for such purchase and paying the compensation therefor by issuance of bonds or notes which may be secured by fixing a lien upon the property so acquired, and limiting said security to such property. Before such lien as is contemplated by this section could be fixed upon the property it must of necessity be in existence. What is said of section 10 we think is also true in relation to section 12, which is as follows:

"*Right to Operate and Maintain Public Utility Exclusive.* In the event said city of Vernon shall acquire, by purchase, gift, devise, deed, condemnation or otherwise, any waterworks, any waterworks system, electric light or power system, gas system, street railway system, telephone system or any other public service utility to operate and maintain for the purpose of serving the inhabitants of said city, the right to operate and maintain such public service utility so acquired shall be exclusive."

[8] The purpose and intent of this section is not clear. Under the above-mentioned article of the Constitution the city has the right to construct a competitive utility, and municipal corporation cannot, under this article of the Constitution, limit its power to operate any public utility which its governing body may deem necessary or proper for the welfare of the inhabitants of said city. If it should be construed to mean that when the city shall commence the operation of its own light and water system that it has the effect of depriving the party holding a franchise to also operate such a system, then that part of the section would be unconstitutional as impairing the obligation of a contract. The question then is: Can the right and the duty resting upon the city authorities to construct and maintain such public service utilities as it may deem requisite be limited by the granting of a previous franchise to a private corporation with power to do the same thing, and is such an attempted limitation in the charter, which conflicts with the general laws valid and binding upon the courts? We think not. Article 11, § 5, of the state Constitution provides:

"Cities having more than five thousand (5,000) inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature, and providing that no charter * * * shall contain any

provision inconsistent with the Constitution of the state, or of the general laws enacted by the Legislature of this state," etc.

So if we should hold that the above-quoted provision of section 12, art. 2, is in conflict with section 1 of article 8, then it also conflicts with the general laws of the Legislature and violates article 11, § 5, of the Constitution. We therefore overrule this contention.

[9, 10] The next contention is that, because the proposition submitted to the people for a vote contemplated the issuance of bonds with interest, payable annually, and because the city commission thereafter, by an order, provided that interest should be payable semiannually, it violates section 1 of article 8 of the city charter and avoids the bonds. We cannot assent to this proposition. The order for the election stated, in accordance with the statutory requirement, what the rate of interest should be. To hold that the city council could, by a subsequent order changing the payment of interest from annual to semiannual or otherwise, would invalidate the bonds, which a majority of the voters had declared at the polls should be issued, would be a dangerous precedent, and would put it within the power of a council unfavorable to the issuance of the bonds to invalidate them and set aside the expressed will of the people by their subsequent action in a collateral matter. We think they had the right to change the interest payments so as to make it payable semiannually, if in the discretion of the members of the council they thought this was best, and, in the absence of a showing that such a change is prejudicial, the court should not revise such action. Moore v. Commissioners' Court of Bell County (Tex. Civ. App.) 175 S. W. 849. If it were shown that the change was prejudicial, the city could rescind its action and make interest payable annually.

[11] It is further insisted that because the city has already reached its tax limit, and the amount it can levy for interest and sinking fund on bonds is needed for bonds and warrants already outstanding, the entire issue should be declared void. It appears that since the bonds in question were voted other bonds have been voted for the purpose of constructing a high school building in the city, and that the valuation of property in the city will not furnish a basis sufficient to support both the high school bonds and the bonds in question. These bonds were based upon a sufficient property valuation and were duly approved by the Attorney General. If, because of the subsequent issue of the high school bonds there has resulted an overissue, it would have the effect of invalidating only such a per cent. of the bonds in question as a calculation under the law and Constitution would show to be an overissue. We have not the data in the record which will enable us to arrive at a correct amount, but this can be determined by the city council from its own records, and, if it should attempt to issue more of the bonds in question than could legally be issued, its action would be enjoined by the courts. With this qualification the judgment of the trial court is reversed, and rendered for the appellant, the city of Vernon, and its officials.

Reversed and rendered.