The sentence will be reformed, and the judgment affirmed.

---

ORNDORFF et al. v. McKEE et al. (No. 634.)

(Court of Civil Appeals of Texas. El Paso. June 16, 1916. Rehearing Denied Oct. 5, 1916.)

1. COUNTIES ⊛196(6) — TAXPAYERS' SUIT — NECESSARY PARTIES TO INJUNCTION SUIT.

A paving company, whose bid for the paving of a public road was accepted by county officials, was a necessary party, without whom the cause could not go on, to a taxpayers' suit to enjoin such officials from entering into a contract with the paving company, since where others, not parties to the proceedings, have a direct interest in the subject-matter of a suit, and a final decree cannot be made without affecting their interest in such manner as is wholly inconsistent with equity and good conscience, the parties so affected are necessary parties; and, where such facts and such parties are revealed by the petition, the cause cannot progress without them.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 308; Dec. Dig. ⊛196(6).]

2. JUDGES ⊛44—DISQUALIFICATION FOR INTEREST.

In a taxpayers' suit to enjoin county officers from contracting for the paving of a public road, where there was nothing in the allegations of fact in the petition whereby, as an immediate consequence of the action of the trial judge, his property tax would be increased or diminished such judge was not disqualified for interest.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 203–207; Dec. Dig. ⊛44.]

3. COUNTIES ⊛196(4) — TAXPAYERS' SUIT— RIGHTS OF PARTIES.

The interest of taxpayers of a county in having competitive bids invited for an unpatented class of pavement and in having the county commissioners required to let the paving contract to the lowest bidder, authorized such taxpayers to maintain a suit against the county officials to enjoin them from making a contract with a paving company for the paving of a public road with a patented pavement at a claimed excessive cost.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 308; Dec. Dig. ⊛196(4).]

4. COUNTIES ⊛196(4)—TAXPAYERS' SUIT— RIGHT OF ACTION.

Under the statute governing the commissioners' court of El Paso county in relation to the laying out or repairing of public roads, where there was better paving which could be laid for less money, taxpayers of the county had the right to enjoin county officials, after deciding to let the job of paving a public road by contract, from making a contract with a company in Texas, subsidiary to a foreign corporation having exclusive control of a patented paving process, to do the paving work by such process, the company being the only bidder on account of having a monopoly of the paving, and being favored by the county commissioners in exchange for political support.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 308; Dec. Dig. ⊛196(4).]

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Suit by R. E. McKee and others against Seth B. Orndorff and others. From an interlocutory order granting a temporary injunction for plaintiffs, defendants appeal. Reversed and remanded, and injunction dissolved.

C. W. Croom, J. F. Woodson, and Lea, McGrady & Thomason, all of El Paso, for appellants. Elfers & Pelphrey, Nealon & Dorman, and Burges & Burges, all of El Paso, for appellees.

HARPER, C. J. This is an appeal from an interlocutory order, granting a temporary injunction in favor of appellees, enjoining the appellants from entering into a contract with the El Paso Bitulithic Company for the paving of about 1,200 feet of a first-class public road of El Paso county.

The allegations in the pleadings of the parties essential to an understanding of the questions which we have concluded should be discussed in disposing of this appeal are as follows:

"Plaintiffs, R. E. McKee, Otto Kroeger, J. N. Mayfield, W. C. Shaw, and W. J. Jennings, * * * complaining of Adrian Pool, James Clifford, Seth B. Orndorff, George Pendell, J. M. Walling, E. B. McClintock, J. D. Ponder, and Roy Barnum, represent:

"I. That plaintiffs reside in El Paso county, Tex., and are property owners and taxpayers in said county, and bring this action as such in their own behalf and in behalf of all other property owning and taxpaying citizens of said county.

"II. [This paragraph designates the official position of each defendant, county judge, county commissioners, county treasurer, etc.]

"III. That it is necessary to improve * * * approximately 1,200 feet of a first-class public road of the county.

"IV. That at a meeting of the commissioners' court, it was determined that said portion of road should be paved, and that bids should be invited by advertisement in a newspaper of El Paso.

"V. That under the provisions of the laws of Texas, it is mandatory upon the commissioners of counties in Texas, when they decide to perform work of the character described by contract, to advertise for bids and to let such contract to the lowest and best bidder, reserving, however, the right to reject any and all bids, which right must be exercised with discretion, and not arbitrarily nor capriciously.

"VI. That at said meeting of said commissioners' court it was proposed that said improvement be a pavement which is known as the heavy standard bitulithic pavement, and bids should be invited on no other pavement; that defendants Orndorff and Pendell favored and voted for this action, defendant Clifford voted against this action, and defendant Pool protested against it, for the reason that by limiting the bids to heavy standard bitulithic, competition would be eliminated, and the board would be depriving itself of the power to determine what was the best paving possible, or the lowest bid upon such paving; that defendant Walling was not present at said meeting; that in pursuance of said action an advertisement was inserted in the El Paso Herald, a newspaper published in the city of El Paso, El Paso county, Tex., inviting bids for the paving and improvement of said public road, and prescribing that the bids upon the paving should be

what is commonly known as heavy standard bitulithic paving; that said public road is within the precinct represented by defendant Clifford.

"VII. That the El Paso Bitulithic Company submitted the only bid on heavy standard bitulithic paving, but bids were submitted upon two types of concrete paving, McKee's bid on concrete being $1,500 less than the bitulithic.

"VIII. That the bid of the El Paso Bitulithic Company was accepted.

"IX. That it is the intention of the commissioners' court to, and it will, enter into a contract with said Bitulithic Company, unless restrained; that such act would be against the best interests of the county, an extravagant, palpable waste of money, illegal and void, and should not be permitted for the following reasons: The bitulithic pavement is a patented process. Therefore it is not possible to have competitive bids; that said patented article is owned by Warren Bros. Company, a foreign corporation, without permit to do business in Texas; that said company had filed with the county judge and county commissioners an agreement to furnish any contractor, desiring to bid, all the necessary material for laying the bitulithic pavement for $1.25 per square yard, but such price is unreasonable, exorbitant, etc.; that this was done to eliminate competition.

"Plaintiffs alleged that said price of $1.25 per square yard was an unreasonable price, and the actual cost of doing the work and supplying the material would be about 40 cents or 50 cents per square yard, and the allowing of the Warren Bros. Company, or their agents or subsidiary corporation a profit of from 70 to 80 cents per square yard was unreasonable, tended to, and did, promote monopoly, tended to and did and was intended to exclude competition and competitive bidding, and was in fraud of the petitioners' rights as taxpayers, tended to and did increase the price at which said paving was or could be laid.

"That the specifications further provided that Warren Bros. Company should file with the proper official or board which is about to receive bids for the work a properly executed binding agreement to furnish any contractor desiring to bid on the work all the necessary bitulithic surface material, mixed, ready for use, and bitulithic cement, and the sand, gravel, or stone screenings for the surface finish course, in accordance with sections 'Wearing Surface' and 'Surface Finish' of the specifications, at a definite reasonable price per square yard, which price should include a license to use the patents required in the construction of the pavement. And plaintiffs allege that this provision of the specifications renders the proceedings void, and the attempted action of the commissioners' court illegal in this: That the court did not exercise its own judgment to determine what was a reasonable price at which said rights and materials should be furnished, but attempted to delegate this judicial discretion to the Warren Bros. Company, a private corporation and party at interest; and plaintiffs further charged that Warren Bros. Company was incorporated outside the state of Texas, and had no permit to do business in the state of Texas.

"Plaintiffs alleged that the specifications further provided that the acceptance of the bids by the county and the letting of the contract for the same should be deemed by Warren Bros. Company to be an acceptance of its proposal by the county of El Paso and by the contractor to whom the contract should be awarded, and should be all that was necessary to bind Warren Bros. Company to the agreement, and that the filing of the bid under the specifications should be construed as an acceptance of the terms of the license filed by Warren Bros. Company at the price fixed in the agreement; and plaintiffs alleged that this rendered the attempt-

188 S.W.—28

ed action of the commissioners' court illegal and void, for the reason that its effect was to compel any person desiring said work to bid upon the same only on condition that he enter into a contract to purchase, not only the license to use the patent rights of said Warren Bros. Company and to purchase from said Warren Bros. Company, not only their bitulithic surface material, mixed, ready for use, but also the sand, gravel, or stone screenings for the surface finish course, which said sand, gravel, and stone screenings were not patented articles, and not susceptible of being patented, and the effect of this specification was to prohibit the bidders from going into the open market to purchase such unpatented articles, and compel said bidders to purchase the said unpatented articles from the only licensee of Warren Bros. Company doing business in El Paso county, Tex. (the El Paso Bitulithic Company), and this specification compelled any bidder who bid upon the work to contract with the El Paso Bitulithic Company for the greater part of the labor and material required in said contract, and compelled said bidder to so contract at an unreasonable, exorbitant, and excessive price, which would leave no profit to the bidder unless such bidder happened to be the El Paso Bitulithic Company; and plaintiffs alleged that this specification was violative of the policy of the laws of the state of Texas and the statutes of the state, in that it was in restraint of trade and fostered monopoly, and that the adopting of said specifications was done in fraud and violation of the rights of the taxpayers of the county, and the result of a conspiracy between said Orndorff and said Pendell on the one side, and the El Paso Bitulithic Company, its officers and agents, on the other, by the terms of which, either expressed or implied, the said El Paso Bitulithic Company was to be and is a favored bidder for paving and road building work in El Paso county, Tex., and its influence, and that of its agents and officers, is and is to be used and exerted in behalf of the political aspirations of the said Orndorff as a candidate for sheriff, and the said Pendell as a candidate for re-election to the office of county commissioner.

"Plaintiffs allege that said specifications were further fraudulent and in fraud of plaintiffs' right to enter into competition with the El Paso Bitulithic Company, for the reason that they favored the El Paso Bitulithic Company, and allowed it through its handling of the patents and processes and material of the said Warren Bros. Company to secure by far the greater portion of the profit which would result from a reasonable price being given the county upon said pavement, and as a result of there being no such competition, the price of $1.77 per square yard at which the commissioners and commissioners' court seek to award the contract to the El Paso Bitulithic Company is excessive, and unless the commissioners are restrained and the other officers restrained, as prayed, the plaintiffs, as taxpayers, will suffer an irreparable injury, and they have no adequate remedy at law.

"That the said action of the commissioners' court, or a majority thereof present at said special meeting, was not had in the use of an honest discretion, but was intended to and did favor the El Paso Bitulithic Company; that it was unnecessary to stipulate that heavy standard bitulithic paving should be laid on said road, for the reason that a concrete pavement could be laid for a smaller price, which would be equally good, and each of plaintiffs was prepared to lay a concrete pavement equal to the heavy standard bitulithic prescribed for a smaller price than was bid by the El Paso Bitulithic Company, and a concrete pavement with a better wearing surface, and which would be more durable and last longer than heavy standard bitulithic pavement, could and would be laid at

a price not greater than that at which the said commissioners' court seek to award said contract to the El Paso Bitulithic Company, if the statutes were complied with and the bidding left open to full and free competition.

"That a reasonable royalty for the use of the patent processes of Warren Bros. Company would run from 15 to 25 cents per square yard, but Warren Bros. Company had made no agreement to permit the use of its processes for such reasonable royalty in El Paso county, although plaintiffs are informed that in other cities throughout the country, to wit, in Indianapolis, Ind., and other places, it has permitted the use of its process for a price of 25 cents per square yard, and in New Orleans, La., has permitted the use of its processes and patents, together with the service of an expert superintendent, for a price of 42 cents per square yard, and in Portland, Or., has entered into the same contract for material and services that it tenders to the county commissioners of El Paso county, but charging therefor 90 cents per square yard, as against $1.25 per square yard in El Paso county.

"That as plaintiffs are informed and believe, Warren Bros. Company have no plant in El Paso county, Tex., from which to supply the material that they undertake to supply by their agreement, but depend upon the El Paso Bitulithic Company to furnish said material, and said price includes, not only the profit to Warren Bros. Company for the use of its patented processes, but a profit to the El Paso Bitulithic Company for labor and material to be furnished; and plaintiffs charge upon belief that there is a secret agreement between Warren Bros. Company and the El Paso Bitulithic Company by which the latter company is favored above other persons who would contract to use said processes and material of Warren Bros. Company; and said offer made to the county commissioners by Warren Bros. Company is not as good and favorable as the terms they allow the El Paso Bitulithic Company.

"Plaintiffs charge upon information and belief that the El Paso Bitulithic Company is a subsidiary corporation of Warren Bros. Company, or that there is such an arrangement between the two that the affairs of both corporations are brought under the same management or controlled for the purpose of producing restrictions in trade and commerce and in the marketing and transportation of the articles necessary to be used in complying with said specifications, and that the affairs of said corporations are so controlled as to maintain the price of $1.25 per square yard for other bidders than the El Paso Bitulithic Company, and the markets as to said products are in this way controlled by said corporations, and that the said commissioners Pendell and Orndorff are aiding in carrying out the efforts of said corporations in this respect, and the effect and intention of adopting the specifications is to effect the object of said combination between said corporations.

"Plaintiffs charge upon belief that the effect and intention of adopting the specification was merely to eliminate competition in the interest of the said El Paso Bitulithic Company, and that by the provisions of the specifications competition had been eliminated, and if the commissioners and officers are permitted to proceed, as they will unless restrained by the court, the effect would be to greatly increase the cost of the pavement over a reasonable cost, and over the amount of cost that would be had were competition had.

"That unless defendants are restrained as prayed, the commissioners' court would award the contract at said excessive price to the said El Paso Bitulithic Company, and would sign said contract, and E. B. McClintock, county clerk, and Adrian Pool, county judge, would issue, sign, and countersign warrants to evidence indebtedness for the work and on account of the contract, and the said Roy D. Barnum, as county auditor, would approve the account of the said El Paso Bitulithic Company for work to be done under the provisions of said contract, and the said J. D. Ponder, as county treasurer, will pay out funds of El Paso county when such warrants are presented, and that plaintiffs have no adequate remedy at law.

"Plaintiffs pray for temporary injunction, enjoining the commissioners' court from entering into and signing the contract, the county judge and county clerk from issuing, signing, or countersigning warrants, the county auditor from approving any account on account of work done under the provisions of the contract sought to be entered into, and the county treasurer from paying out funds of the county, and pray that on final hearing such injunction be made permanent."

The defendants filed general demurrer and general denial.

[1] Appellants suggest that it is apparent upon the face of the petition that the El Paso Bitulithic Company is a necessary or indispensable party to this suit, and that therefore the petition is subject to general demurrer. We think the rule applicable here is that where others not parties to the proceedings have a direct interest in the subject-matter of the suit, and a final decree cannot be made without affecting their interest in such manner as wholly inconsistent with equity and good conscience, the persons so affected are necessary parties to the proceedings, and where such facts and such parties are revealed by the petition, the cause cannot progress without them. Matagorda Canal Co. v. Markham Irr. Co., 154 S. W. 1180. It is apparent that the real party in interest to construct the pavement is not before the court, and, further, that the decree in this suit will settle whether or not the El Paso Bitulithic Company has the right to a contract with the county to construct the paving sought to be enjoined, and for this reason the cause must be reversed and remanded for necessary parties.

In view of another trial, and apprehending that the same questions will likely be before the court upon such hearing, we have concluded that it is advisable to express our opinion upon the following questions suggested by the briefs:

[2] Was the trial judge disqualified on account of interest to sit in the case? Where a judicial officer has such an interest in the matter at issue in a given suit that any order, decree, or judgment entered therein will affect him directly in a pecuniary manner, he comes within the provisions of the Constitution, and is disqualified. On the other hand, if the result of his judgment, decree, or order is but to remotely affect him pecuniarily, or is dependent upon other contingencies, he is not disqualified. City of Austin v. Nalle, 85 Tex. 520, 22 S. W. 668, 960. City of Dallas v. Peacock, 89 Tex. 58, 33 S. W. 220. Whilst the petition contains such allegations as that the action is brought on

behalf of the named plaintiffs, as well as in behalf of all other property owning, taxpaying citizens of the county; "that the action [of the commissioners] constituted a fraud upon the taxpayers of the county," etc.; "that unless they were restrained from entering into the contract, your petitioners will suffer irreparable pecuniary loss, in that their taxes will be increased for them and their fellow taxpayers in said county by an unwarranted and extravagant expenditure of county funds," etc.—the allegations of fact are not sufficient to be construed to be a foundation for all of such dire results as a consequence of the acts of the commissioners' court. So far as the pleadings of the parties reveal the facts to be, the county now has the money ready to pay for the work proposed to be done. There is no request that the collection of any tax be enjoined, nor that the issuance of any bonds be restrained, but, on the other hand, the petition, fairly construed, simply prays that the commissioners' court be enjoined from letting the contract to any other than the lowest bidder under a fair and equitable advertisement for bids, where all who cared to bid for the work to be done would and could have an equal chance. And it clearly appears from the allegations that, whether it costs the taxpayer more or less to restrain the commissioners from letting this contract depends upon the future acts of this or another commissioners' court, for the court might do the work without contract, or by contract, costing either more or less than the one sought to be enjoined, or might not be done at all. At most, there is nothing in the allegations of fact in the petition which could, as a consequence of or as an immediate result of the action of the trial judge, increase or decrease his property tax, nor would his act charge him with or relieve him from the payment of any money as a direct and consequent result of his injunctive order, for there is nothing in the pleadings of either party to indicate that there is to be a tax levy or a bond issue to meet the expense of this contract, or if the work is not to be done by contract, to meet the expense of the work. The basic principle upon which this suit is predicated is that any property taxpayer, or any person interested in bidding for the proposed work to be done, is entitled to invoke the powers of the courts, to the end that the commissioners' court be required to comply with the statutes, and in so doing prevent the particular paving being done under the proposed contract, because it is in violation of the statute regulating said commissioners' court in this particular instance. So if we be correct in this construction as to the legal effect of the pleadings, there is no such interest, manifest upon the face thereof, in any taxpaying judge in the county as would disqualify.

[3] In this connection, appellant suggests that if the trial judge has no such interest in the subject-matter of the suit as to disqualify him, then there could be no such interest in the plaintiffs as would authorize them to maintain the suit. It will be noted that the interest which disqualifies the judge must be a direct pecuniary interest; a remote pecuniary interest or an interest dependent upon future contingencies does not disqualify. According to the allegations of the petition, the plaintiffs named have at least the latter class of interest; i. e., if the court, upon final trial, sustains their contentions that bids must be called for, for a class of paving which permits competitive bids, and that the commissioners be required to let the contract to the lowest bidder, and that, upon such action being taken, it would result in a saving to the taxpayer, there is such an interest stated in the pleadings as authorizes the now plaintiffs to maintain this suit.

[4] This brings us to the real question: Does plaintiffs' petition show a good cause of action? It will be noted that the petition contains the charges: (a) That the commissioners' court had decided to let the laying of this paving by contract, but that they called for bids upon what is known as "Warren Bros. Bitulithic," a patented process in the exclusive control of Warren Bros. of Massachusetts, a foreign corporation; that the specifications adopted prescribed such conditions that there could be no competition; (b) that the El Paso Bitulithic Company, the successful bidder, is a subsidiary corporation to the said Warren Bros., and the only bidder, and was favored by the commissioners in exchange for the support of it and its agents and employés in furtherance of their candidacy for office; (c) that there is other better paving which could and would have been laid for less money, if it had been left to competitive bids, as contemplated by the statute. Neither one nor both of the latter charges are sufficient of themselves to support the decree, but, as supporting allegations to the first, and taken together, constitute sufficient grounds for the writ. The statute governing the commissioners' court in working, laying out, or repairing the public road reads:

"The commissioners' court of El Paso county, Texas, shall have full power and authority and it shall be its duty to adopt such system for working, laying out and repairing the public roads and also such plans and specifications for building and repairing all buildings (bridges) in said county as it may deem best; and from time to time said court may change its system, plans and specifications for working roads and building bridges. Said commissioners' court shall have power to purchase such teams, tools, and machinery as may be necessary for the working of its roads. The commissioners' court of said county shall have power to construct, grade or otherwise improve any road or bridge either by day labor or by contract. In case said work is done by contract, said court, if it so decides, may direct the county judge to advertise in such

manner and for such length of time as said court may determine, for bids to do such work, and the contract shall be let to the lowest responsible bidder, who shall enter into a bond payable to the county judge of said county for the use and benefit of the road and bridge fund of said county, with two or more good and sufficient sureties to be approved by the county judge and the commissioners in whose precinct the work is to be done, in a sum double the amount of the work contracted for, conditioned for the faithful compliance with the terms of the contract, but the court shall have the right to reject any and all bids."

This statute grants the court power to do the work themselves or by contract. If by contract, after the court has decided that it shall be done by contract, the contract must be let to the lowest bidder. The effect of this language is to charge the court with the duty to select a class of paving upon which all contractors may bid who desire to do road work, and not to select a class of paving arbitrarily, or for political purposes, which could not be bid upon, and performed by different persons, and not to select a class of paving which cannot be done as cheaply as another paving of equal value. To put any other construction upon this statute would be to take away its clear intent and purpose.

The charge in the petition is that to permit the court to let this contract under the circumstances would result in a fraud upon the taxpayers and a future loss in money to them, in that, if spent now without receiving its value in paving, it would not be available for future necessary road work, and, if not now spent, would be. These are sufficient allegations of interest in the plaintiffs as taxpayers to authorize them to maintain the suit. This must necessarily be so for the reason that, if taxpayers have not the right to invoke the powers of the court to prevent the commissioners' court from giving away the funds of the county for unlawful purposes, then there is no person who is or could be authorized to do so, and the funds of the county could be dissipated by it upon any sort of pretext. For instance, section 52, art. 3, of the Constitution of Texas provides that counties, cities, and towns shall not lend its credit or grant public money to corporations. Suppose that notwithstanding this constitutional provision, the commissioners' court attempted to make such a contribution to assist a railroad company to build into the county; would it be contended that the taxpayer could not invoke the powers of the courts to enjoin such grant? Clearly, the power or authority in such matters lies in the taxpayer, because there is no other who can have any pecuniary interest in the proper expenditure of the funds of the county.

Reversed and remanded, and injunction dissolved.