## CITY OF HENDERSON v. FIELDS. *
### (No. 2837.)

(Court of Civil Appeals of Texas. Texarkana.
Feb. 2, 1924. Rehearing Denied
Feb. 14, 1924.)

**1. Judges ⬤═44—Taxpayer not disqualified to sit in action against city.**

District judge was not disqualified to try an action against a city for personal injuries and render judgment for the plaintiff merely because he was a taxpayer on property within the city.

**2. Municipal corporations ⬤═964—Judgment for personal injuries a "current expense" of city.**

A judgment against a city for damages for personal injuries is a debt for "current expenses" for which it may be required to impose taxes to pay.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Current Expenses.]

**3. Municipal corporations ⬤═957(3)—Statute authorizing taxation for certain purposes held not invalid because not fixing definite maximum tax rate for each purpose.**

Acts 37th Leg. (1921) c. 9, § 1 (Vernon's Ann. Civ. St. Supp. 1922, art. 925), permitting cities to collect annual taxes to meet interest and sinking fund on all indebtedness legally incurred prior to the adoption of the constitutional amendment of September 25, 1883, and to meet expenses for enumerated purposes such as current expenses, public buildings, etc., is not void as not fixing a definite maximum tax rate or per cent. allowable separately for each single municipal purpose specified, and leaving it to the discretion of the city, in view of Const. art. 11, §§ 4, 5; the act placing a limitation, not exceeding the rate fixed by the Constitution, upon the sum total of taxes collectable annually for the combined enumerated purposes, and Const. art. 8, § 9, prohibiting a tax levy exceeding a fixed amount for each of the public purposes specially enumerated, not applying to the above constitutional provision.

**4. Constitutional law ⬤═137—Municipal corporations ⬤═958 — Statute authorizing increased tax rate held to permit collection of taxes to pay judgment rendered before passage.**

Acts 37th Leg. (1921) c. 9, § 1 (Vernon's Ann. Civ. St. Supp. 1922, art. 925), authorizing an increased tax rate for current expenses, held to warrant city in assessing and collecting tax to pay judgment rendered against city for personal injuries five years before its passage as a current expense, the obligation to pay a personal judgment being a continuing one, and the doctrine of retrospective legislation not applying under Const. art. 1, § 16, making ineffective retroaction legislation impairing the obligation of contracts.

**5. Municipal corporations ⬤═73—Legislature may raise or lower tax rate.**

It is within the power of the Legislature in its exercise of power within the limits of constitutional provisions to raise or lower the rate or sum of taxes generally collectable, and a given city or town has no vested right to continue a tax rate formerly existing as against a tax rate differently provided according to law.

Appeal from District Court, Rusk County; J. R. Warren, Judge.

Action for mandamus by Miss 'Dottie Fields against the City of Henderson. Judgment for plaintiff, and defendant appeals. Affirmed.

This is an action for mandamus to raise money for the payment of a judgment debt owing by the city of Henderson to appellee. Prior to the filing of this application the appellee recovered a judgment in the district court against the city of Henderson in the sum of $4,000, with legal interest thereon, as damages for personal injuries sustained by her by reason of alleged negligence in the maintenance of a sidewalk. City of Henderson v. Fields (Tex. Civ. App.) 194 S. W. 1003. The judgment remained wholly ' unpaid, though formal demand was properly made for its payment.

The city of Henderson made answer to this action for mandamus, claiming: (1) That the judgment for damages rendered in favor of appellee was legally void because the district judge who tried the case and rendered the judgment was disqualified under the law to try the case, on the ground that he was a resident citizen of and the owner of taxable real and personal property situated within the corporate limits of the city of Henderson; (2) that the said judgment is not now and never has been a debt within the rightful power granted by law to a city like appellant to impose taxes to pay either as a claim or indebtedness for current expenses of government, or as a claim or indebtedness for special or local purposes; (3) that the city of Henderson is now imposing taxes to the maximum rate and amount fixed and limited by the statute; and (4) that Acts of the 37th Legislature of 1921, p. 12, is inapplicable to this judgment debt and action for mandamus, because it was enacted five years after the rendition of the judgment and is retroactive in its operation and effect.

The suit was tried before the court, on an agreed statement of facts. The agreed facts, as material to state, are:

"That the city of Henderson is a town and was incorporated as a town of more than 1,000 and less than 5,000 inhabitants, and that it is now a city of under 5,000 inhabitants.

"That the levies for taxes made by the city of Henderson are now, and were at the time this suit was filed in December, 1922, an aggregate total of 55 cents on the $100, made up as follows: Thirty cents for general purposes; water purification, bonds, interest and sinking fund, 6 cents; waterworks bonds, interest and sinking fund, 10 cents; fire station bonds, interest and sinking fund, 1 cent; street improve-

ment bonds, interest and sinking fund, 5 cents; street paving bonds, interest and sinking fund, 3 cents; total, 55 cents. That 1922 was the first and only year when more than 25 cents was levied for general purposes, and that for the year 1923 the council made a levy of 25 cents for general purposes and 30 cents for sinking fund, accrued interest and bonded indebtedness.

"That the assessed valuation of the property of the city of Henderson is $1,982,885 for the year 1922.

"That the bonded indebtedness of the city of Henderson at the present time is $85,000.00, made up at follows: [Here each bond issue is stated.]

"That there is now due the city of Henderson approximately $2,500.00 of delinquent taxes, of which about one-half would go to the general fund if collected.

"That said judgment debt of the plaintiff has not been paid by the council, and no effort has been made by the city of Henderson and said council to pay same because of their claim that they were unable to do so because they had no funds in this; that in the year 1916 and each year thereafter the 25 cent levy permitted for general purposes by the law under the act of 1921 was the extent of the taxing power of the city of Henderson and that all of this money was used in paying current expenses, and there was no balance left over out of which to pay the plaintiff's judgment.

"That the tax levy of 1914, 1915, 1916, 1917, and 1919 was 65 cents for all purposes, and during each of these years 25 cents being levied for general purposes. In 1918 the rate was 56 cents for all purposes, including 25 cents for general purposes.

"That the reason for the increase of the levy for general purposes in 1922 from 25 cents to 30 cents was to meet emergencies created prior thereto by deficiencies.

"It is further agreed that W. C. Burford, the presiding judge before whom this case was originally tried, was a resident citizen of the town of Henderson and a taxpayer on $8,170.00 property for himself and various members of his family located within the corporate limits of said city.

"That the city of Henderson has no property that it is not using for public purposes, and therefore has no property that execution could reach, and has not had since this judgment was rendered."

The court filed the following conclusions of law:

That Judge W. C. Burford was not disqualified to try the case and render the judgment in the case of Miss Dottie Fields v. City of Henderson in July, 1916, upon which judgment in this suit is based.

"That the City of Henderson has the power, through and by its mayor and city council, to levy, assess and collect taxes not to exceed 1½ per cent. of the taxable property in said city.

"That the plaintiff is entitled to recover a judgment against the city of Henderson for the principal and interest on the judgment sued on, amounting to $5,626.65 with 6 per cent. interest per annum thereon from this date.

"That plaintiff is entitled to have a peremptory writ of mandamus as prayed for command-

ing the city of Henderson and its mayor and city council and their successors in office and agents to levy a sufficient tax to pay plaintiff's judgment."

The judgment as entered commands the city council to forthwith levy and collect a tax as of and for the year 1923, "in an amount sufficient to pay" the judgment, "not exceeding thirty-five cents upon every hundred dollars valuation" of taxable property.

J. W. McDavid, and Victor A. Smith, both of Henderson, for appellant.

R. T. Jones, and J. Y. Gray, both of Henderson, and Bryan, Dyess and Colgin, of Houston, for appellee.

LEVY, J. (after stating the facts as above). [1] We think the court correctly decided that the district judge was not disqualified to try the case and render the judgment in the damage suit of appellee against the appellant merely because he was a taxpayer on property within the corporate limits of the city. Thornburgh v. City of Tyler, 16 Tex. Civ. App. 439, 43 S. W. 1054; Kopperl v. Board of Equalization (Tex. Civ. App.) 45 S. W. 1129; Orndorff v. McKee (Tex. Civ. App.) 188 S. W. 432. For the judge was not, in such circumstance, "interested" or affected directly in a pecuniary manner either in the "cause" itself or in the matter at issue in the original suit for damages of whether or not there was any negligence and of whether or not there would be a recovery for damages and the amount thereof. Even taxpayers are not disqualified to sit as jurors in actions for damages against the city. City of Marshall v. McAllister, 18 Tex. Civ. App. 159, 43 S. W. 1043. The judge, as a taxpayer, would not be disqualified in respect to the judgment for damages until and unless an action was brought like the instant one, on the said judgment, having for its purpose to compel the levy of taxes or to directly subject property to taxation to pay same. City of Austin v. Nalle, 85 Tex. 520, 22 S. W. 668, 960; City of Oak Cliff v. State, 97 Tex. 393, 79 S. W. 1068; and other cases cited by appellant. For only in such cases would the judge then be, as a taxpayer, directly and immediately, and not remotely, "interested" in a pecuniary manner in the result and outcome, and as well in the question at issue in the case. We conclude that the judgment was not void and the assignment should be overruled.

[2] It is insisted that a judgment for damages for personal injuries, as here in suit, is not a debt for "current expenses" of government or for any of the special or local purposes within the power granted by law to a town or city operating under the general law, like appellant, to impose taxes to pay. While a judgment for damages for personal injuries may not be classed as an obligation arising out of an undertaking voluntarily entered into or arising purely out of contract on the

part of a city, yet such judgment legally operates to be an expense or charge cast or imposed upon such city by law, judicially determined to be payable by it out of the taxes collectable for public purposes. For the law imposes liability upon a city for torts growing out of the usual discharge of corporate functions. 2 Cooley on Torts, p. 1002, and numerous reported cases. Since the legal liability on which the judgment was rendered arose in the ordinary course of running the city government, which was within its power to do, a sufficient legal reason exists to authorize payment of such character of obligations to be made out of the taxes levied and collected for the general purposes of the city. Therefore it is believed that the court properly classified the judgment, as he did in this proceeding, as a current expense of the city, to be paid with current revenue. City of Sherman v. Langham, 92 Tex. 13, 40 S. W. 140, 42 S. W. 961, 39 L. R. A. 258.

[3] The further propositions stated in the appellant's brief present in effect the two points in view, viz.: (1) That Acts 1921, p. 12, is both unconstitutional and void as against public policy, in that the Legislature has not, as within its power to do, fixed a definite maximum tax rate or per cent. allowable separately for each single municipal purpose specified in the law, but has left it to the discretion of the governing body of the particular city or town to arbitrarily fix the tax that shall be annually levied and collected for each of such purposes; and (2) that the maximum tax rate for "current expenses" of a city or town authorized by law prevailing at the time the judgment was rendered alone governs this mandamus suit, since to require the levy of a higher rate of tax for such special purpose, as is authorized by the act of 1921, to satisfy the obligation of a city or town arising out of a past transaction, would operate in legal effect to make the new statute in question retroactive, specifically prohibited by the Constitution.

An amendment of sections 4 and 5 of article 11 of the Constitution was submitted to the voters of the state and adopted by the requisite vote. Section 4 as amended reads:

"Cities and towns having a population of five thousand or less may be chartered alone by general law. They may levy, assess and collect such taxes as may be authorized by law, but no tax for any purpose shall ever be lawful for any one year which shall exceed one and one-half per cent. of the taxable property of such city; and all taxes shall be collectible only in current money, and all licenses and occupation taxes levied, and all fines, forfeitures and penalties accruing to said cities and towns shall be collectible only in current money."

After this, at its next session, the Legislature passed Acts 1921, p. 12, which reads, as bearing upon the question presented:

"Section 1. The city council or governing body of any city or town in this state having a population of five thousand or less shall have power by ordinance to levy, assess and collect an annual ad valorem tax sufficient to meet the interest and sinking fund on all indebtedness legally incurred prior to the adoption of the constitutional amendment of September 25, 1883, regarding the power of cities and towns to levy and collect taxes, etc., and may also levy, assess and collect such taxes as such city council or governing body may determine, not to exceed for any one year one and one-half per cent of the taxable property of such city or town, for current expenses and for the purpose of construction or the purchase of public buildings, waterworks, sewers, and other permanent improvements, within the limits of such city or town, and for the construction and improvement of the roads, bridges and streets of such city or town within its limits." Vernon's Ann. Civ. St. Supp. 1922, art. 925.

"Sec. 6. All laws and parts of laws in conflict herewith are hereby repealed, and articles 881, 882 and 925, as amended, of the Revised Civil Statutes, 1911, are hereby particularly repealed."

Comparing these two provisions it does not appear that the Legislature in enacting the statutory provision has exceeded its due authority, or has failed to secure the legal protection which our system of government affords to the property of its citizens against wrongful or arbitrary taxation. The constitutional provision expressly empowers cities and towns having 5,000 or less inhabitants to "levy, assess and collect such taxes as may be authorized by law." As a consequence of its terms the power is lodged in the Legislature to delegate to such cities and towns the general authority to levy and collect such ad valorem taxes as may be needed annually for their own municipal purposes, within due bounds of law. And the statutory provision enacted by the Legislature in plain and express terms confers upon such cities and towns the general authority to provide "by ordinance" for the levy, assessment, and collection of such ad valorem taxes "as such city council or governing body may determine." The constitutional provision places the following limitation upon the rate or amount:

"But no tax for any purpose shall ever be lawful for any one year which shall exceed one and one-half per cent of the taxable property of such city."

And the statutory legislation in question expressly provides that the taxes collectable by such cities and town are

"not to exceed for any one year one and one-half per cent of the taxable property of such city or town."

The maximum rate does not exceed the rate fixed by the Constitution. The taxes so authorized by the Legislature to be levied and collected annually are allowable, as expressly stated, for the specific purposes, viz.:

(1) "For current expenses;" (2) "and for the purpose of construction or the purchase of public buildings, waterworks, sewers and other permanent improvements within the limits of such city or town;" (3) "and for the construction and improvements of the roads, bridges and streets of such city or town within its limits." These specified "purposes" are clearly within the requirement of section 3 of article 8 of the Constitution providing that taxes shall be levied and collected "for public purposes only." Consequently the statute in question has the effect of expressly restricting the exercise by the city or town of the authority to levy and collect taxes, by fixing, entirely within the constitutional provision, a maximum rate of ad valorem taxes, collectable annually, and only for public purposes, specifically enumerated. The requirements of a valid tax law are met when by its provisions, as here, all taxable property shall be alike subjected to the tax, and no higher rate or greater tax levy in proportion to value is imposed then authorized by law. And the purposes of the tax, to which it only shall be applied, are distinctly stated, and are, in fact and in law, public purposes only. It is true that by the terms of the act it is left to the city council or governing body of the city or town to "determine" and provide "by ordinance" the special rate that annually shall be levied separately for each of the three specified purposes. But the act places a limitation upon the sum total of ad valorem taxes collectable annually for all three of the enumerated purposes combined together. And the authority to levy a maximum tax for all of the purposes carries with it the authority to fix or make a percentage apportionment of such total tax that could be collected for each purpose separately. For instance, the governing body of the city or town may under the act properly apportion and fix a levy on the $100 valuation of not exceeding, say, 40 cents for "current expenses," 60 cents for "construction or the purchase of public buildings," etc., and 50 cents for the "construction and improvement of streets," etc. Evidently it was in the mind of the Legislature that, instead of itself fixing the apportionment of taxes to each purpose, it was expedient to authorize local municipal bodies, better adapted to understand local necessities to make the apportionment to each purpose within the bounds of the sum total taxes allowable, as the local exigencies require. It is not indispensable to the validity of the act that the Legislature itself fix the precise amount of the levy that shall be made for each purpose separately. The validity must rest on the fact that a maximum tax rate is fixed by the Legislature directing the amount of taxes that is allowable to be collected from the taxable property for the purposes specified. The constitution-

al provision does not, expressly or by implication, deny authority to the Legislature to delegate to the city or town the authority to make the apportionment to the several purposes as their own governing bodies may determine proper, within the bounds of the sum total tax authorized by the law. Section 9 of article 8 of the Constitution does prohibit a tax levy exceeding a fixed amount for each of the public purposes specially enumerated; but, as held by the Supreme Court, that section does not have application to and govern the constitutional provision in question. Lufkin v. City of Galveston, 63 Tex. 437.

[4, 5] Recurring to the second point above, it appears that the Legislature passed the act in question about five years after the rendition of the judgment. At the time the judgment was rendered, article 925 of the Revised Statutes fixed the maximum tax rate that could be levied by a city or town to defray "current expenses" at 25 cents on the $100 valuation of taxable property. The act of 1921 authorizes an increased tax rate for current expenses of a town or city of the population of appellant. The doctrine of retrospective legislation sought to be applied does not legally have application to the character of case here presented, and consequently the tax rate prescribed by the present act would be available to enforce the present payment of the judgment debt. The tax rate here was in no wise a subject-matter of express contract between the parties which may not be impaired by imposing a tax rate contrary to the terms of contract. Section 16, art. 1, of the state Constitution, makes ineffective retroactive legislation "impairing the obligation of contracts." "Unless the Constitution prohibits," quoting from 1 Cooley on Taxation (3d Ed.) p. 492, "retrospective legislation, the basis of an assessment of taxes may as lawfully be retrospective as the reverse; that is to say, it may as well have regard to benefits theretofore received as to those which may be assessed thereafter."

And besides the obligation to pay a personal judgment is a continuing one. It is within the power and competency of the Legislature, in its exercise of power within the limits of a constitutional provision, to raise or lower the rate or sum of taxes generally collectable. Since the power of taxation is exerted by the Legislature for a public and not a private purpose, a given city or town has no vested right to continue a tax rate formerly existing, as against a tax rate differently provided according to law.

We have given special consideration to the record and to the clear and well-prepared brief of the appellant's attorneys, in view of the important questions submitted for decision. Our conclusion, though, is that the judgment should be affirmed; and it is accordingly so ordered.