**MEYERS et al. v. WALKER et al.***
(No. 10976.)

(Court of Civil Appeals of Texas. Fort Worth.
March 29, 1924. Rehearing Denied
May 24, 1924.)

**1. Injunction ⊗⇒143(1)—Improperly dismissed where statutory notice not served on plaintiffs.**

Court erred in dismissing a temporary writ of injunction on defendant's written motion, where notice provided by Rev. St. art. 4664, was not served on plaintiff.

**2. Injunction ⊗⇒129(2)—Court without authority to dismiss plaintiff's petition for injunction in chambers.**

Court was without authority to dismiss plaintiff's petition on dissolution in chambers of an injunction.

**3. Municipal corporations ⊗⇒993(3)—Taxpayers' petition for injunction held maintainable, though filed too late, as contest of bond election.**

If a petition by taxpayers for an injunction amounted to nothing more than a contest of an election authorizing paving bonds and was therefore filed too late, in view of Rev. St. art. 3051, its dismissal was reversible error, where petition alleged that levy for bond issue was in excess of constitutional tax limit and that certain municipal officers were acting in collusion with one of the bidders.

**4. Municipal corporations ⊗⇒918(2)—Mayor's failure to sign resolution held not to invalidate bond election.**

Mayor's failure to sign resolution of city commission authorizing an election to issue paving bonds held not to invalidate such election, in view of Rev. St. art. 807, where election order was filed without any objection by mayor, and was passed by two commissioners, mayor not voting, and posted notice for election was signed by him.

**5. Municipal corporations ⊗⇒918(3)—Notice of bond election held sufficient.**

Rev. St. art. 607, providing time and place of holding certain municipal elections, was sufficiently complied with where written notice of proposed bond election was signed by the mayor and posted in three public places for more than 30 days prior thereto, specifying that election was to be held in county courtroom, and was published in a local newspaper, though there were two courtrooms in the same building.

**6. Municipal corporations ⊗⇒1000(5)—Allegations of misconduct on part of officers held indefinite.**

An allegation, in a taxpayers' petition for an injunction restraining city authorities from issuing bonds for paving, of misconduct on part of mayor and one of commissioners with one of the bidders for paving, held not sufficiently definite and specific.

**7. Municipal corporations ⊗⇒993(3)—Taxpayers entitled to honest judgment of officers in sale of bonds.**

Municipal taxpayers are entitled, in sale of bonds or making of contracts for improvements, to have the honest judgment and services of the mayor and commission, unaffected by personal interest or official misconduct.

On Motion for Rehearing.

**8. Municipal corporations ⊗⇒957(3)—Tax levy for bond issue held in excess of constitutional limitation.**

A 30-cent tax authorized in payment of municipal bonds for specified municipal purposes in a city of less than 5,000 inhabitants was in excess of its constitutional limitation, in view of Const. art. 8, § 9; such special provision not being affected by general provision of Const. art. 11, § 4, declaring a tax limit of 1½ per cent. on the $100 valuation, and article 11, § 5, relating to cities of more than 5,000 inhabitants, being inapplicable.

Appeal from District Court, Dawson County; Clark M. Mullican, Judge.

Suit by R. L. Meyers and others against Jesse Walker and others. From a judgment of dismissal, plaintiffs appeal. Reversed.

Bean & Klett, of Lubbock, for appellants.
W. P. Dumas, of Dallas, for appellees.

CONNER, C. J. On January 28, 1924, the appellant R. L. Meyers and seven other taxpaying voters of the city of Lamesa, Tex., sought and obtained a temporary injunction against Jesse Walker, mayor, and C. H. McCormick and J. R. Flaniken, commissioners, and J. R. Lourie, secretary, respectively, of the city of Lamesa, restraining them from declaring the result of a bond election for street improvements held on December 4, 1923, and from selling or offering to sell street-improvement bonds authorized by said defendants in an order of December 12, 1923, and restraining them from levying or collecting the 30-cent tax provided for in said order of December 12, 1923, and further restraining them from contracting for any of the street improvements contemplated. On the 31st day of January, 1924, the defendants presented to the district judge of Lubbock, Tex., an answer to the petition of plaintiffs and moved to dissolve the temporary injunction. No previous notice of the filing of the answer or of the motion to dissolve was given to the plaintiffs, and they protested and objected to the hearing on that ground. The trial judge nevertheless heard the motion and dissolved the writ and dismissed the plaintiffs' petition, to which action the plaintiffs duly excepted and gave notice of appeal to this court.

Article 4663, Revised Statutes, reads as follows:

"The defendant to an injunction proceeding may answer as in other civil actions; but no injunction shall be dissolved before final hearing because of a denial of the material allegations of the plaintiff's petition, unless the answer denying the same is verified by the oath or affirmation of the defendant."

⊗⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted June 12, 1924. Judgment affirmed 265 S. W. ——.

Article 4664 thus reads:

"In all cases of injunction, motions to dissolve the same without determining the merits may be heard after answer filed, in vacation as well as in term time, at least ten days' notice of such motion being first given to the opposite party or his attorney. In such cases, the proceedings upon such hearing, including the action of the judge upon the motion, shall be entered upon the minutes of the proper court by the clerk thereof, on or before the first day of the succeeding term of such court, and thereafter shall constitute a part of the record of the same."

[1] We are of the opinion that the trial court erred in dissolving the temporary writ of injunction theretofore issued by him at the time and place he did, over the protest of the plaintiffs in the petition; the notice provided for in article 4664 not having been given.

Appellees insist, in substance, that they made no written motion to dissolve the temporary writ, and therefore notice was not required, but in this contention they are contradicted by the formal bill of exception taken at the time and duly approved by the trial judge and presented in the transcript before us. It is there distinctly stated, in so far as necessary to quote, that—

"On January 31, 1924, came on to be considered by the district judge of the Seventy-Second judicial district of Texas, in vacation, at the courthouse in Lubbock, Tex., a written motion presented by Attorney Dumas, of Dallas, for the defendants to dismiss the plaintiffs' petition for injunction in the above styled and numbered cause, whereupon counsel for the plaintiffs protested against and objected to any hearing before entering into any proceeding, on the ground that the motion aforesaid had not been filed with the clerk, and on the further ground that neither the plaintiffs nor attorney for plaintiffs had been served with 10 days' notice as required by article 4664 of the Revised Statutes of Texas, and on the further ground that the plaintiffs were not prepared to resist the defendants' said motion and were not acquainted with the grounds thereof, all of which protests, and objections, being heard and considered by the court, were overruled," etc.

The defendants' answer covers some 14 pages in the transcript and consists of numerous exceptions and allegations of fact. In addition to what has heretofore been quoted from the bill of exception, the court certified:

"When Attorney Dumas presented the motion for hearing, that said motion, consisting of about 23 typewritten pages, had been finished, he said, about 10 minutes; that said motion had not been filed with the clerk and no notice thereof served on plaintiffs or their attorneys; that they had no opportunity for knowing the grounds of the motion other than that afforded during the hearing which lasted perhaps 2 or 3 hours."

The consideration that we have given the case indicates that a number of questions are presented involving more or less intricacy and requiring a search of the authorities, and we are of the opinion that under the circumstances the plaintiffs should have been afforded the due notice expressly provided for in such cases by article 4664.

[2] We think it also clear under the authorities that the court erred in dismissing the plaintiffs' petition. It has been long held that when an injunction is dissolved in chambers the judge has no authority to also dismiss the suit. Price v. Bland, 44 Tex. 145; Grant v. Chambers, 34 Tex. 573; Aiken v. Carroll, 37 Tex. 73; Coleman v. Goyne, 37 Tex. 552. This is true even in cases where the temporary injunction has been dissolved on the filing of an answer swearing away the equities of the bill. It has been held that it is error to dismiss, though the plaintiff made no request for the trial on the merits. Pullen v. Baker, 41 Tex. 419; Fulgham v. Chevallier, 10 Tex. 518; Burnley v. Cook, 13 Tex. 586, 65 Am. Dec. 79; Dearborn v. Phillips, 21 Tex. 449; Texas Land Co. v. Turman, 53 Tex. 623.

[3] Appellees, as we infer, attempted to answer the exception to the court's dismissal of the petition by a contention to the effect that the case is one only cognizable under chapter 8, tit. 49, of the statutes relating to contests of an election, and that the contest here, if it may be construed as a contest, of the election held on December 4, 1923, comes too late, in that it appears from the allegations in plaintiffs' petition that notice of the contest was not given within 30 days after the return day of the election, as provided in article 3051 of said chapter. But we do not think we can dispose of appellants' objection to the court's dismissal of the suit on this ground, for, if it be conceded that the plaintiffs' petition, so far as the plaintiffs seek to set aside the election referred to, amounts to no more than a contest of the election of December 4, 1923, there are, nevertheless, other allegations of the petition clearly maintainable in this suit. To illustrate, among other things, it is alleged in the petition, in substance, that by virtue of the election of December 4, 1923, the defendants on December 12, 1923, undertook to authorize and direct the sale of coupon bonds for and in behalf of the city of Lamesa to the extent of $40,000, and levy a tax of 30 cents on the $100 valuation of taxable property in said city with which to pay the interest of 6 per cent. on said bonds and provide a sinking fund for street improvement purposes, and that said levy of 30 cents is in excess of the constitutional tax limit, etc.

The plaintiffs further allege, in substance, that—

The defendant mayor and one of the commissioners "are off on a trip out of the state, on an inspection trip, at a great expense, un-

der an agreement that such expense shall be borne and paid by one of the bidders for the paving, that is to be paid for with the proceeds of the bonds, and that said bidder or bidders have already filed with the city their bids for the contracting for said paving," etc.

And it is insisted that such agreement is in violation of the Penal Code and deprives the plaintiffs and others similarly situated of having the mayor and commissioners free and untrammeled in the exercise of the duties required of them in making and accepting bids for the street improvements. Clearly allegations and issues of this character are available to plaintiffs in this suit, irrespective of the question whether, in order to take advantage of the irregularities in the election attacked, it was necessary to comply with the statutes relating to contested elections. The judgment, accordingly, must be reversed, and the temporary injunction and cause upon its merits continued for a further hearing.

In view of the reversal, however, we will briefly discuss a number of the other material questions presented. It is alleged that the city of Lamesa is a municipal corporation, incorporated under the commission form of government in accordance with chapter 21, General Laws Thirty-Third Legislature of Texas (Vernon's Sayles' Ann. Civ. St. 1914, art. 1070 et seq.), and has accepted the provisions and assumed the duties set forth in chapter 1 to 13 of title 22 of the Revised Statutes.

[4] Article 807 of chapter 3 of title 22 reads:

"All ordinances and resolutions adopted by the council shall, before they take effect, be placed in the office of the city secretary; and if the mayor approve thereof, he shall sign the same; and such as he shall not sign, he shall return to the city council, with his objections thereto. Upon the return of any ordinance or resolution by the mayor, the vote by which the same was passed shall be reconsidered; and if, after such reconsideration, a majority of the whole number of aldermen agree to pass the same, and enter their votes on the journal of their proceedings, it shall be in force; and if the mayor shall neglect to approve or object to any such proceedings for a longer period than three days after the same shall be placed in the secretary's office as aforesaid, the same shall go into effect."

Appellants attack the election under consideration on the ground that the order for the election, made on October 23, 1923, was "not signed by the mayor and not returned to the commissioners with his objections and reconsidered and passed by them, for, if it be so, there is no record in the journal showing their votes thereon, as required by said article 807." If we consider these averments as amounting to a specific allegation that the order for the election was not signed by the mayor, it nevertheless appears from the verified answer of the defendants that the order for the election was filed in the office of the city secretary without any notation thereon or an objection by the mayor, and, further, that the order was passed by the two commissioners, the mayor not voting, and that the posted notice for the election was signed by the mayor. Assuming that these averments of the defendants' answer were credited by the trial judge, as he evidently did credit them, we think the irregularity of the mayor's failure to sign the particular order or resolution of the city commission for the election will not invalidate it, in any event, for the article of the statute quoted evidently contemplates that an order of the kind may be passed if the mayor shall neglect to approve or object thereto, and it expressly provides that, if he does so for a longer period than three days after the same shall be placed in the secretary's office, it shall go into effect.

[5] It is contended that the trial court erred in dissolving the temporary injunction because of plaintiffs' allegations to the effect that the place for holding the election of December 4, 1923, was not set forth as contemplated by article 607 of the statutes. The article referred to provides that commissioners' courts, or city or town councils of such incorporated towns, shall determine the time and place or places of holding elections, and the manner of holding the same shall be governed by the laws of the state regulating general elections.

It was alleged that the notice in the case before us was indefinite and uncertain, in that it provided for the election "at the courtroom in the city of Lamesa, Tex.," whereas, in fact, there were two courtrooms, one for the county court and one for the district court, in the same building. The verified answer of the defendants, however, makes it to distinctly appear that there was a written notice signed by the mayor, posted in three public places in the city of Lamesa, to wit, the courthouse, post office, and First National Bank, as required by the law regulating general elections, for more than 30 full days before the date of election, specifying that the election was to be held in the county courtroom.

It was further alleged in the answer that notice of the election had been in fact published in the Dawson County Journal on November 2d, 9th, 13th, 16th, and 30th. So that, conceding the necessity of giving a sufficient notice of the election, we cannot say, in view of the verified answer, that the court erred in dissolving the temporary writ of injunction on this ground.

The allegations of the petition as to the effect that the levy of 30 cents on the $100 valuation for the payment of the interest and sinking fund of the bonds in question seem to be well taken. The averments of the pe-

tition in this respect are not denied, and it is expressly provided, among other things, in section 9 of article 8 of our Constitution, that—

"No county, city or town shall levy more than twenty-five cents for city or county purposes. * * * And for the erection of public buildings, streets, sewers, waterworks and other permanent improvements, not to exceed twenty-five cents on the one hundred dollar valuation, in any one year, and except as is in this Constitution otherwise provided," etc.

We are of the opinion that this special provision is controlling and not affected by section 4, art. 11, of the Constitution, providing that cities and towns of 5,000 and less may assess and collect such taxes as may be authorized by law, but that—

"No tax for any purpose shall ever be lawful for any one year which shall exceed one and one-half per cent. of the taxable property of such city," etc.

This section is general in its scope and merely defines the limit to which taxes may be levied for all city purposes.

[6, 7] The allegations of plaintiffs' petition tending to show misconduct on the part of the mayor and one of the commissioners are not, we think, sufficiently definite and specific, and we will therefore not discuss this phase of the petition further than to say that the property taxpayers of the city of Lamesa are undoubtedly entitled, in the matter of the sale of the bonds or in the making of contracts for the contemplated improvements of the streets, to have the honest judgment and services of the mayor and members of the city commission, unaffected and uninfluenced by any purely personal interest or official misconduct.

We find nothing further which now requires particular notice, but for the errors before specified it is ordered that the judgment below be reversed, and that the temporary writ of injunction be reinstated and continued until the further order of the trial court, and that the cause be set down regularly for trial on its merits.

### On Motion for Rehearing.

[8] It is seriously contended that—

We "erred in holding that section 9 of article 8 of the Constitution, in respect to the taxing powers of cities, is a special provision, and is controlling and not affected by section 4 of article 11 of the Constitution, providing that cities and towns of 5,000 and less may assess and collect taxes not exceeding in any one year 1½ per cent. of the taxable property of such city, and that therefore the 30-cent tax authorized in payment of the bonds is in excess of the limitation prescribed by section 9 of article 8."

The following cases are cited in aid of this contention: City of Henderson v. Fields (Tex. Civ. App.) 258 S. W. 523; Lufkin v. City of Galveston, 63 Tex. 437; Bridgers v. City of Lampasas (Tex. Civ. App.) 249 S. W. 1083.

The case of Bridgers v. City of Lampasas is one in which the question for determination was whether the city, by ordinance, had the power to contract for permanent street improvements and in payment therefor issue interest-bearing warrants payable in furture years. It was held that the city had such power under legislative acts and was not inhibited by section 9, art. 8, of the Constitution. The validity of an ordinance levying a specific tax for a named year or years beyond the limitation of section 9, art. 8, of the Constitution, was not involved or determined; hence the decision is not controlling here.

The case of City of Henderson v. Fields, by the Texarkana court, is one in which a plaintiff sought a writ of mandamus to compel the levy of a tax for the payment of a judgment against the city for damages for personal injuries. The decision seems to hold that a cited legislative act, under section 4, art. 11, of the Constitution, commits the matter of the apportionment of amounts to be levied for specified city purposes wholly to the governing body of the city, provided the constitutional limit of 1½ per cent. on the $100 valuation is not exceeded. In other words, that in cities of 5,000 inhabitants or less, the city, under such legislative act and constitutional section, might, within the limit mentioned, exceed the limitations fixed for special purposes by section 9 of article 8 of the Constitution. What the court said pertaining to the question before us is:

"It is not indispensable to the validity of the act that the Legislature itself fix the precise amount of the levy that shall be made for each purpose separately. The validity must rest on the fact that a maximum tax rate is fixed by the Legislature directing the amount of taxes that is allowable to be collected from the taxable property for the purposes specified. The constitutional provision does not, expressly or by implication, deny authority to the Legislature to delegate to the city or town the authority to make the apportionment to the several purposes as their own governing bodies may determine proper, within the bounds of the sum total tax authorized by the law. Section 9 of article 8 of the Constitution does prohibit a tax levy exceeding a fixed amount for each of the public purposes specially enumerated; but, as held by the Supreme Court, that section does not have application to and govern the constitutional provision in question. Lufkin v. City of Galveston, 63 Tex. 437."

If the legislative act there under consideration and section 4 of article 11 of the Constitution be alone considered, the conclusion of law as indicated in the quotation is evidently correct; but the conclusion that section 9 of article 8 of the Constitution, which does not prohibit tax levies in excess of speci-

fied amounts for purposes specially enumerated, had no application, is based alone upon the decision in Lufkin v. City of Galveston, supra, and we do not so interpret the decision. In that case the right of the city of Galveston to levy for the municipal year beginning March 1, 1884, a tax of 99 cents on the $100 valuation of property within the city for general purposes and 7 cents on the $100 as an emergency fund was questioned, and it was held that section 9 of article 8 of the Constitution had no application and did not control section 5 (not section 4) of article 11 of the Constitution. Section 5 of the Constitution in general terms, relates to cities of more than 5,000 inhabitants and not to cities, as here under consideration, containing 5,000 or less. Section 5 of article 11, in general terms, provides that—

"Said cities [of more than 5,000 inhabitants] may levy, assess and collect such taxes as may be authorized by law or by their charters; but no tax for any purpose shall ever be lawful for any one year, which shall exceed 2½ per cent. of the taxable property of such city." etc.

We can well understand how it can be said that section 9 of article 8 of the Constitution is of no controlling effect in the consideration of a case arising under article 5 of section 11 of the Constitution, inasmuch as these two sections of the Constitution relate to wholly different classes of cities. But section 9 of article 8 and section 4 of article 11 relate to the same class of cities, to wit, those containing 5,000 inhabitants or less, and relating, as they do, to the same class and to the same general subject, we have been unable to give our assent to the proposition that the limitations contained in section 9, article 8, of the Constitution may be entirely disregarded either by the courts or the Legislature, as must be done, as it seems to us, if we adopt the contention of appellees relating to the subject. As we construe it, section 4 of article 11 of the Constitution merely fixes the limit of taxes that may be authorized by law, while section 9 of article 8 specifically limits taxes that may be levied for specified city purposes; and we see no necessary inconsistency in the two articles. What was said on this subject by Chief Justice Willie in the case of Lufkin v. City of Galveston, supra, applies here, we think, to wit:

"It is a cardinal rule in the construction of Constitutions and statutes that the whole instrument must be taken together—the whole scheme had in view by the lawmaking power must be understood and carried out; and where there are apparent conflicts or inconsistencies between different parts of the instrument, that construction must be adopted which will give effect to every part, rather than that which will render any portion nugatory and of no avail.

"As a natural result of this principle, it follows that where in one section a general rule is prescribed, which without qualification would embrace an entire class of subjects, and in another section a different rule is prescribed for individual subjects of the same class, the latter must be construed as exceptions to the general rule, and be governed by the section which is applicable to them alone. This gives effect to both sections, and prevents the otherwise necessary result that the special section would entirely fail to have any force whatever. Erwin v. Blanks, 60 Tex. 583; Warren v. Shuman, 5 Tex. 442; Sedgw. on Con. & Stat. Law, 242; Vattel's Rules of Construction, No. 8.

"This rule of interpretation should certainly be adopted when the Constitution or statute under construction contains language which shows that the general section must yield to the other as to the special subjects provided for in the latter."

Applying the rules of construction so clearly given, we can but think that the limitations specified in section 9 of article 8 of the Constitution are yet effective as to cities containing 5,000 inhabitants or less, and they seem to have been so treated by our Supreme Court in the case of Carroll v. Williams, 109 Tex. 155, 202 S. W. 504. In this connection, and as further supporting the views expressed, it will be interesting to note that the same Legislature that proposed the amendment to section 4 of article 11 of the Constitution also proposed an amendment to section 9 of article 8 limiting authorized tax levies for specified purposes, including a tax limit of 50 cents instead of 25 cents "for the erection of public buildings, streets, sewers, waterworks and other permanent improvements," etc. See General Laws Thirty-Sixth Legislature, pp. 346, 359. While the proposed amendment to section 4 of article 11 of the Constitution was adopted, the proposed amendment to section 9 of article 8 of the Constitution was rejected by the electors at the election to which the amendment had been submitted, thus indicating it to be the will of the people that section 9 of article 8 in its present form and with its limitations should remain a paramount law of the state.

We do not deem it necessary to discuss other questions presented in the motion, and it will accordingly be overruled without further notice.